No. 19,638.

THE STATE OF KANSAS, *Appellant*, V. FREDERICK H. MEYER, doing business as The Meyer Sanitary Milk Company, *Appellee*.

### SYLLABUS BY THE COURT.

"PURE FOOD LAW"—*Sale of Impure Milk—Information States a Public Offense Under the Statute*. The state board of health having made a rule and regulation fixing the standard for milk kept and offered for sale and sold to others to the effect that milk shall contain not less than 3.25 per cent of milk fat nor less than 8.50 per cent of solids not fat, an information which charged that at a certain time the, defendant kept and offered for sale and sold milk which contained less than the standard prescribed by the state board in violation of the rules and regulations of the state board of health and of the statutes states an offense under section 3 of the drugs and foods act, being section 3077 of the General Statutes of 1909.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed March 6, 1915. Reversed.

*S. M. Brewster*, attorney-general, *S. N. Hawkes*, assistant attorney-general, and *James M. Meek*, county attorney, for the appellant.

*J. E. McFadden*, and *O. Q. Claflin, jr.*, both of Kansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: On September 22, 1913, an amended information was filed in the district court of Wyandotte county charging that:

"Frederick H. Meyer, doing business under the firm, name and style of The Meyer Sanitary Milk Company, at said county of Wyandotte, State of Kansas, within the jurisdiction of this court, on or about the 25th day of June, 1913, being then and there engaged in the delivery and sale of milk, did unlawfully and wilfully keep for sale, offer for sale, sell, or cause to be

sold a quantity of milk, the exact amount of which is unknown, to one J. A. Bukaty, which milk was then and there adulterated in this, to-wit: that said milk contained less than 3.25 per cent of milk fat and less than 8.50 per cent of solids not fat, in violation of the rules and regulations of the Kansas State Board of Health, and contrary to the statute in such case made and provided."

Meyer moved to quash the information on the ground that it failed to state a public offense, and the motion being sustained the state appeals.

The prosecution evidently undertook to charge a violation of the drugs and foods act, and the question presented here is, Does the information state an offense under the provisions of that act? In section 3 of chapter 266 of the Laws of 1907 as amended by section 1 of chapter 184 of the Laws of 1909 it is provided:

"That the State Board of Health is authorized and directed to make and publish uniform rules and regulations, not in conflict with the laws of this state, for carrying out the provisions of this act, which rules and regulations shall be published in the official state paper, which rules and regulations, among others, shall provide for the collection and examination of specimens of foods and drugs manufactured, kept for sale, offered for sale or sold in the state of Kansas; and said Board of Health is further authorized and empowered to make, define, adopt and publish standards of quality, purity and strength for foods and drugs. Any person who shall violate any of the rules and regulations so made and published in the official state paper shall be deemed guilty of a misdemeanor, and on conviction shall be punished by a fine not exceeding fifty dollars or imprisonment in the county jail not more than six months, or both, in the discretion of the court." (Gen. Stat. 1909, § 3077.)

One of the regulations adopted by the state board of health under the authority conferred by the legislature is that:

"When any article of food, liquor, drug or drink falls below the standards of quality, purity or strength

which have been adopted by the United States Department of Agriculture or the Kansas State Board of Health, it shall be regarded as misbranded or adulterated within the meaning of the Kansas Food and Drugs Law." (Kansas State Board of Health Regulation No. 30.)

The board also adopted regulation No. 35, subdivision B of which provides:

"Milk is the fresh, clean, lacteal secretion obtained by the complete milking of one or more healthy cows, properly fed and kept, excluding that obtained fifteen days before and five days after calving, and contains not less than eight and one-half (8.5) per cent of solids not fat, and not less than three and one-quarter (3.25) per cent of milk fat, and contains no preservatives, added water, or other foreign substance."

This provision, it will be observed, is quite similar to the definition of milk prescribed by the legislature in the act providing for the appointment of a dairy commissioner and for the supervision of dairies and butter, cheese and ice-cream factories. (Gen. Stat. 1909, § 8747.) No question is raised as to the power of the legislature to authorize the state board of health to adopt and publish standards as to the quality, purity and strength of foods and to make rules and regulations for carrying out this and other provisions of the act. It is not contended that there is a lack of power in the legislature to prescribe penalties for the violation of such regulations as the board is authorized by the legislature to make. There is no contention that the board has authority to create an offense or to exercise legislative power by making the violation of one of its regulations a public offense. The question here is, Does the information charge that the defendant has done that which the legislature has declared to be an offense and for which it has prescribed a penalty? It is contended that the information is defective in that it fails to specify the manner in which the milk has been adulterated by the defendant, and it is insisted that

to state an offense it must charge the doing of one or more of the specific acts prescribed in the section defining adulteration. (Gen. Stat. 1909, § 3081.) The act, as will be observed, contains many provisions and makes the violation of each of a number of them a misdemeanor for which a penalty is prescribed. Among them it makes the manufacture of foods or drugs that are adulterated or misbranded or which contain any deleterious substance an offense. It also provides that any one who sells, keeps or offers for sale any adulterated or misbranded food, drug or liquor shall be guilty of a misdemeanor. In section 3081 of the General Statutes of 1909, to which reference has been made, it is provided, in effect, that foods shall be deemed to be adulterated if any substance has been added to or abstracted from them, or shall be mixed with or substituted for them, or where there is any treatment of foods which would conceal damage or inferiority, or if it consist of a filthy, decomposed, tainted or putrid animal or vegetable substance, or any portion of an animal unfit for food, or if it is the product of a diseased animal or one which died otherwise than by slaughter. The next section defines the term "misbranding" as applied to articles of foods and drugs.

In a prosecution for the violation of the provisions which prohibit and punish adulteration an allegation of the means of adulteration employed by the defendant would be necessary, but this prosecution, as we have seen, is not brought under any of these provisions, but is brought on the one which provides that the state board of health shall make rules and regulations fixing standards for foods and drugs, and which makes the violation of such rules and regulations a misdemeanor. It is true that the word "adulterated" is used in one part of the information, but it is a superfluous term and was only used to characterize the milk which it is alleged was not up to the standard fixed by the state board of health. The specific charge made

against the defendant is that he kept, offered for sale and sold milk in violation of the rule and regulation made by the state board of health, fixing the standard for milk. It has been suggested that the section in question falls short of making the keeping and offering for sale and the selling of foods which are below the standard an offense, that the fixing and publishing of standards is not a rule or regulation, and that only a violation of the rules and regulations is declared to be an offense. Although the section is somewhat awkwardly phrased there can be little doubt of the legislative purpose in enacting it. It first confers general authority on the board to make rules and regulations, and these are required to be published in the official state paper. It is then enacted that, among others, the rules and regulations shall provide for two things: First, the collection and examination of specimens of foods and drugs; and, second, the board is authorized and empowered to make, define, adopt and publish standards of quality, purity and strength of foods and drugs. There is a semicolon at the end of the clause relating to the collection and examination of specimens, but the succeeding clause is a continuation of the subject and is but the enumeration of another regulation that the board is authorized to make. It is the same as if it had been said that in making rules and regulations the board, among other things, shall provide for the collection and examination of specimens of foods and drugs and shall make, define, adopt and publish standards of quality, purity and strength of foods and drugs. The action of the board in fixing and publishing a standard is the making of a rule and regulation for the violation of which a penalty is prescribed. The information does not, of course, state that the milk has been adulterated by adding something to it or substituting something for it, but briefly alleges that the milk which the defendant kept and sold contained less than a certain per cent of milk fat and less than a certain per

cent of solids not fat, and this, as we have seen, is a violation of the adopted and published rule made by the state board of health.

The order of the district court sustaining the motion to quash will, therefore, be reversed and the cause remanded for further proceedings.

MASON, J. (concurring specially) : My own present views of the matter are these:

Regulation No. 30 of the board of health is invalid as an attempt to exercise purely legislative power—in effect to amend a statute.

The legislature may forbid the sale of an article of food which falls below a standard to be fixed by the board of health, but it has not done so.

A regulation or order defining milk as an article containing a certain percentage of milk fat is in a sense violated by selling, or producing, or using an article containing a less percentage; but to declare such a definition does not in terms forbid the sale of an article not conforming to it, and does not imply such a prohibition with the clearness to be expected in a law creating a public offense, which must be subjected to some strictness of interpretation. Therefore the statutes and regulations quoted in the opinion of the court do not support the information.

Moreover a statute enacted in 1909 seems to deal directly with the matter, reading thus:

"Whosoever shall sell . . . milk . . . that shall not comply with the standards hereinafter provided, shall be guilty of a misdemeanor." (Gen. Stat. 1909, § 8743.)

A section of the same act fixes a standard requiring milk to contain three and one-fourth per cent of butter fat. (Gen. Stat. 1909, § 8747.) The information states facts sufficient to constitute an offense under this statute if, as I understand to be the case, the terms "milk fat" and "butter fat" are synonymous.

The State v. Meyer.

WEST, J. (dissenting): I dissent for two reasons. First, the information states no offense whatever, because it charges that the defendant did one of three things, and there being no charge as to which one of the three things he did, he should not be called upon to defend. In other words, pleading in the disjunctive is no pleading at all. This is the universal rule, and has also been recognized and followed by this court. (*The State v. Seeger*, 65 Kan. 711, 70 Pac. 599.)

Second, the statute invoked does not make it a crime openly to sell, use or have on hand milk below the standard fixed by the state board of health. It will not do to guess people into the commission of crimes by imagining what the legislature would have done had its attention been called to its failure to express a meaning.

The prosecution can not be sustained under section 8743 of the General Statutes of 1909, because in order to make a sale unlawful the product sold must fail to comply with the standards "hereinafter provided," and those thus provided are not the ones prescribed by the state board of health, and the defendant was charged only of violating those prescribed by this board.

It is a matter of no difficulty whatever to frame a statute and information both clear beyond the question and needing no construction.

PORTER, J., concurs in this dissent.