The State v. Crawford.

---

No. 21,987.

THE STATE OF KANSAS, *Appellant*, V. L. M. CRAWFORD and ROY CRAWFORD, *Appellees*.

No. 21,988.

THE STATE OF KANSAS, *Appellant*, V. THE PEOPLES AMUSEMENT COMPANY et al., *Appellees*.

SYLLABUS BY THE COURT.

1. STATUTE—*Fire-protection Act—Delegation of Powers to Provide Individuals Unconstitutional*. The legislature cannot delegate to private individuals and private associations of persons the power to make obligatory rules concerning the management and care of property, nor can it provide that the breach of such rules shall be a penal offense.

2. SAME. The provision in section 5 of the fire-prevention act, section 4863 of the General Statutes of 1915, requiring that "all electric wiring shall be in accordance with the national electrical code," is void for uncertainty.

3. SAME. The "national electrical code" is a set of rules relating to electrical wiring, etc., promulgated by a body of private individuals and voluntary unofficial organizations which meets occasionally throughout the United States. These rules are revised from time to time. A statute requiring the owners of theaters to make all their electrical wiring conform to the "national electrical code" is an attempt to delegate the legislative power of this state, and is therefore unconstitutional.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed January 11, 1919. Affirmed.

*S. M. Brewster*, attorney-general, and *Hugh T. Fisher*, county attorney, for the appellant.

*W. W. Hooper*, of Leavenworth, and *J. B. Larimer*, of Topeka, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The state of Kansas appeals from judgments of the trial court which quashed certain informations charging defendants with misdemeanors under section 5 of the fire-prevention act, section 4863 of the General Statutes of 1915, which, among other matters, provides—

"All electric wiring shall be in accordance with the national electrical code."

Defendants conduct and operate theaters, and the informations alleged that they did unlawfully operate these theaters as places of amusement, etc., "without having the wiring of said theaters in accordance with the national electric code, to wit: by not having such wiring enclosed in conduit or armored cable; contrary to the form of the statutes," etc.

Counsel for the state advise us:

"The national electrical code consists of installation rules of the National Board of Fire Underwriters for electrical wiring and apparatus, as recommended by the Underwriters' National Electric Association. It was originally drawn in 1897, as the result of the united efforts of the various insurance, electrical, architectural and allied interests which, through the National Conference on Standard Electrical Rules, composed of delegates from various national associations unanimously voted to recommend it to their respective associations for approval or adoption."

This code is revised every two years. The edition of 1915 is a pocket manual which apparently covers the whole art of installing electric switchboards, poles, lines, inside and outside wiring of theaters, car houses, garages, and ships, also suitable designs and materials for fuses, circuit breakers, insulated joints, wireless telegraph apparatus, etc.

The manual recites that the national conference has disbanded and that its work has been taken over by the following associations:

"American Electric Railway Association, American Institute of Electrical Engineers, Associated Factory Mutual Fire Insurance Companies, National Association of Electrical Inspectors, National Board of Fire Underwriters, National Electric Light Association, National Electrical Contractors Association."

It is not disclosed where the national conference convened when this code was promulgated, nor where its periodical meetings for revision of these rules are held, but inventors

seeking to have their new electrical devices recognized by the code are instructed to submit them to "Underwriters' Laboratories," in Chicago or New York.

In considering the correctness of the district court's decision in quashing the informations against the defendants, it is only necessary to recur to the most simple and elementary principles of civil government.    In our commonwealth the power to make, amend, alter and repeal the laws is vested in the legislature.   That body may not abdicate its functions nor delegate its powers to any other body, however learned, wise and farsighted the latter may be.   This principle of our constitution and of our public policy is fundamental.

Some courts, including our own, have relaxed, or seemingly relaxed, the rigid enforcement of this principle in some instances, by giving countenance to legislation enacted to punish as misdemeanors or otherwise to penalize the breach of rules promulgated or to be promulgated afterwards by some subordinate official body created by the legislature.   (*The State v. Meyer*, 94 Kan. 647, 146 Pac. 1007; *Pappens v. United States*, 252 Fed. [C. C. A.] 55; *Georgia Railroad Co. et al. v. Smith et al., Railroad Commissioners et al.*, 70 Ga. 694; *Isenhour v. State*, 157 Ind. 517; *Hildreth v. Crawford et al., Commissioners of Pharmacy*, 65 Iowa, 339; *People v. Brooks*, 101 Mich. 98; *Hurst v. Warner*, 102 Mich. 238; *Polinsky v. People*, 73 N. Y. 65; 8 Cyc. 830-834; 21 Cyc. 387, 388.   See, also, *The State v. Railway Co.*, 76 Kan. 467, 471-481, 92 Pac. 606; *Ex parte McNulty*, 77 Cal. 164; and *Railroad Com., etc., v. Grand Trunk, etc., R. Co.*, 179 Ind. 255.)

But none of the cases cited has ventured so far afield as to intimate that the legislature might delegate to some unofficial organization of private persons, like the National Fire Protective Association, the power to promulgate rules for the government of the people of this state or for the management of their property, or that the legislature might prescribe punishment for breaches of these rules.   We feel certain that no such judicial doctrine has ever been announced.   If assent to such a doctrine could be given, a situation would arise where owners of property with considerable persistence might learn what these code rules were and incur the expense of making their property conform thereto, only to find that the National Fire

Protective Association had reconvened in Chicago, New York, or New Orleans, and had revised the code, and that the work and expense had to be undertaken anew. And there would be no end of such a state of affairs. Furthermore, there is no official way, indeed no practical way, for the average property owner to know what these code rules are. The laws of this state to which our people owe obedience must be officially published. The people may learn what these laws are, and they are privileged to meet legislative committees and petition the legislature for amendment, improvement, and amelioration of the laws. Shall it be intimated that if these fire-prevention regulations, these "national electrical code" rules, are oppressive, or otherwise objectionable, the property owners of this state must be referred to some voluntary and unofficial conference of underwriters and electricians, which occasionally meets here, there or anywhere in North America, for redress of grievances? But the fallacy of such legislation in a free, enlightened and constitutionally governed state is so obvious that elaborate illustration or discussion of its infirmities is unnecessary. If the legislature desires to adopt a rule of the national electrical code as a law of this state, it should copy that rule and give it a title and an enacting clause and pass it through the senate and the house of representatives by a constitutional majority and give the governor a chance to approve or veto it, and then hand it over to the secretary of state for publication.

The clause in section 5 of the fire-prevention act, section 4863 of the General Statutes of 1915, requiring that "all electric wiring shall be in accordance with the national electrical code," is void for uncertainty, and the informations charging offenses thereunder were properly quashed.

The court owes it to counsel for the state to say that in the presentation of this appeal they candidly acknowledge the critical point in the controversy and admit that they have merely brought the case here to procure an authoritative determination of it.

The judgment is affirmed.