No. 23,747.

GUY S. MILLER, *Plaintiff*, v. J. S. JOHNSON et al., as THE STATE BOARD OF EMBALMING OF THE STATE OF KANSAS, *Defendants*.

### SYLLABUS BY THE COURT.

1. STATE BOARD OF EMBALMING—*Authority to Promulgate and Enforce Rules Regulating the Embalming of Human Bodies — Power to Revoke Embalmer's License.* The statute (Gen. Stat. 1915, §§ 10293-10309), which authorizes the state board of embalming to make rules, not inconsistent with the laws of this state or of the United States, regulating the embalming of dead human bodies, and to conduct examinations to issue licenses to qualified persons for the practice of embalming, etc., is sufficient authority for the state board of embalming to promulgate and enforce a rule for the revocation of a license issued and accepted pursuant thereto, for the infraction of a valid rule of such board.

2. SAME. Under the powers conferred by law upon the state board of embalming to make rules touching the practice of embalming and to issue licenses to persons found to be duly qualified, such board has power, for good cause shown, and upon due notice and a fair hearing, to revoke an embalmer's license when he confesses to have violated a valid rule of the board, notwithstanding such violation is also a misdemeanor punishable by a fine.

3. SAME—*Statute Authorizing Board of Embalming to Promulgate and Enforce Its Rules Constitutional.* There is no constitutional objection to the embalmer's statute which declares it to be a misdemeanor to violate a reasonable rule of the state board of embalming, although the rule is only promulgated by virtue of that statute and the rule itself is not prescribed until after the statute declaring its infraction to be such misdemeanor is enacted.

4. SAME—*Under Facts Shown No Breach of Statute Appears.* The facts confessed by plaintiff in a hearing before the state board of embalming, on a complaint that he had violated the law and a certain rule of the board made pursuant thereto, examined, and held to be no breach of the statute itself.

5. SAME—*Rules of Embalming Board Must Be Reasonable.* Where an official board like the state board of embalming is authorized to make and enforce rules concerning the embalming of dead human bodies, and for the examining and licensing of embalmers, such rules must be reasonable, and any rule clearly unreasonable or one given an unreasonable interpretation or application is void.

6. SAME—*Rule as Applied to Facts Shown Unreasonable.* The summarized facts of this case disclose: A citizen of Geneseo died in a hospital at Little River. His death was not the result of a communicable disease. His relatives requested the plaintiff, an undertaker at Geneseo, to bring home the dead man's body. He complied, bringing home the body in an automobile hearse, over the highways of a rural community, a journey of fifteen miles. He disregarded a rule of the state board of embalming which would have required that before bringing home the dead body, he should have embalmed it and waited thereafter for twelve hours, and he should have procured a removal permit from the local registrar of embalmers at Little River, and should have tagged the dead body with a yellow paster furnished by the state board. In consequence of the breach of this rule, the plaintiff's license as an embalmer was revoked. *Held,* that this rule, as interpreted by the state board and as applied to the facts outlined above, is unreasonable and void, and *held,* also, that the plaintiff is entitled to reinstatement as a licensed embalmer.

Original proceeding in mandamus. Opinion filed December 10, 1921. Writ allowed.

*Samuel Jones,* and *Ben Jones,* both of Lyons, for the plaintiff.

*Richard J. Hopkins,* attorney-general, and *John G. Egan,* assistant attorney-general, for the defendants.

The opinion of the court was delivered by

DAWSON, J.: This is an original proceeding in mandamus in which the plaintiff seeks to have restored to him his license as an embalmer, which the defendants, as the state board of embalming, canceled because of plaintiff's breach of a rule of the board touching the transportation of a dead body without first embalming it and without first obtaining a removal permit from the local registrar.

The circumstances were these: One Robert Archibald, a resident of Geneseo, in Rice county, died in a hospital at Little River, in the same county; and the relatives of the deceased directed the plaintiff, the local undertaker, to go to Little River and bring home the body of Mr. Archibald. The plaintiff complied; he brought the body home in an automobile hearse, through an ordinary rural district, a distance of fifteen miles.

The local embalmer at Little River filed with the state board of embalming a complaint against plaintiff for breach of certain rules of the board. The board gave plaintiff notice of a hearing on the complaint at Hutchinson. Plaintiff appeared and admitted the facts. The board made a finding that plaintiff had violated section 10309 of the General Statutes of 1915, and rule 1, adopted by the board pursuant to this section. Thereupon, the board canceled the plaintiff's license as an embalmer, and in this action he seeks reinstatement.

The statute which the board found that plaintiff had violated reads:

"The state board of embalming shall from time to time adopt rules and regulations, not inconsistent with the laws of this state or of the United States, whereby the performance of the duties of the secretary and said board and the practice of embalming dead human bodies and transportation of same shall be regulated. All companies or individuals operating or controlling railroads, express companies, electric railways, coaches, public and private conveyances, and all licensed embalmers in this state, shall obey the rules and regulations when made and published in the official state paper by the state board of embalmers, and any licensed embalmer, or any person or owner having charge of any railway train, passenger coach, electric railway, public or private conveyance, who shall refuse or neglect to obey such rules and regulations when made

and published in the official state paper by the state board of embalmers shall
be guilty of a misdemeanor, and for each offense shall be punished by a fine
of not less than fifty dollars nor more than two hundred dollars." (Gen. Stat.
1915, § 10309.)

The rule which the board found that plaintiff had violated reads:

"Rule. Yellow pasters used for the transportation of dead human bodies,
must contain Registrar's Removal Permit, Licensed Embalmer's Certificates
Nos. 1 and 2, Railway, Express and Public or Private Conveyance Transit
Form. Paster must be approved by the Kansas State Board of Health. Said
pasters to be furnished by the State Board of Embalming of the State of
Kansas, and issued only to embalmers holding a valid license from said board.

"The embalmer who prepares a body for transportation (except to local
or adjacent cemeteries), must fill out Licensed Embalmer's Certificates Nos. 1
and 2, also secure Registrar's Removal Permit, all properly filled out and
signed. Said embalmer shall detach Original Licensed Embalmer's Certificate
No. 2 and immediately forward same to the Secretary of the State Board of
Embalming of the State of Kansas.

"The person, agent or owner of any Railway Company, Express Company,
Electric Railway, Coaches, Public or Private Conveyance, who receives a dead
human body for transportation, must fill out Railway Express, Public or
Private Conveyance Transit Form and sign as person, agent or owner, and
securely fasten Original Paster containing Registrar's Removal Permit, licensed
Embalmer's Certificate No. 1 and Transit Form on the shipping box or case
(so that the same may be read); said Yellow Paster must accompany body to
destination.

"No person, agent or owner of any Railway Company, Express Company,
Electric Railways, Coaches, Public or Private Conveyances, shall transport,
receive or offer for transportation any dead human body (except disinterred
body), unless said body has been embalmed twelve (12) hours and is accom-
panied by a Yellow Paster, properly filled out and signed by a Kansas
Licensed Embalmer in accordance with this rule."

Another rule of the board (No. 26) provides that if any licensed
embalmer violates any provision of the embalmer's law or any rule
of embalming, etc., pertaining thereto, upon complaint, notice and
hearing, his license may be revoked.

Counsel for the plaintiff first contends that the statute does not
confer power on the state board of embalming to cancel the plain-
tiff's license, and that the statute itself provides the exclusive pen-
alty for the violation of any valid rule of the board—a fine of $50
to $200.

The court is not inclined to adopt this view. Passing for the
moment the question concerning the reasonableness of the particular
rule whose infraction brought about the cancellation of plaintiff's
license, it seems clear that the comprehensive powers conferred on

the board were broad enough to authorize the making of a rule for the cancellation of a license, upon notice and a fair hearing, and for good cause shown. Plaintiff obtained his license in conformity with the valid rules of the board and accepted it pursuant thereto. (*Child v. Bemus*, 17 R. I. 230, 12 L. R. A. 57.)

In *Metropolitan Milk & C. Co. v. City of New York*, 98 N. Y. Supp. 895, a milk dealer brought a damage suit against the city and others because his license to sell milk had been revoked by the board of health. Under the state law the authority and power to license and regulate the sale of milk was vested in the board of health. The board had power to issue permits, but the statute did not in express words confer the power to revoke them. The sale of milk without a license, and the sale of impure milk were statutory misdemeanors. The board was charged with the duty of enforcing "all the laws . . . applicable . . . to the preservation of human life, or to the care, promotion or protection of human health." An excerpt from the opinion is quite pertinent to this phase of the present question:

"The board gave to the plaintiff notice of these charges, and after a hearing it revoked the permits; and to sustain the contention of the plaintiff we must hold that such permit thereby becomes irrevocable and authorizes the person to whom it was granted to continue forever to sell milk, although the conditions under which the permit was issued were continually violated, the provisions of the Sanitary Code in relation to milk sold disregarded, and that a person acting under a permit from the board of health is selling to the inhabitants of the city of New York poisonous and impure article for food, endangering the public health. The sole authority that the health board would have, if this contention was correct, would be to prosecute the person selling the poisonous article in the shape of milk, fine it, and in the meantime such person could go on poisoning the people under a permit or license from the health authorities, a proposition which is so unreasonable that a mere statement is sufficient to refute it. There is nothing in either the Penal Code or the charter that makes such a permit irrevocable. The permit itself provides that it is revocable at the pleasure of the board, and the plaintiff accepted it with that condition. There is nothing unreasonable in this condition; and, irrespective of the general power of the board of health to revoke a permit which is being abused and under which the person accepting it and using it is persistently violating the law, it is certainly not an unreasonable condition to insert into such a permit a provision that it is revocable by the board that issues it." (p. 897.)

In *State, ex rel. Nowotny v. Milwaukee*, 140 Wis. 38, 133 A. S. R. 1060, where a milk peddler's license had been revoked under a statute authorizing the city to license, restrain and regulate the sale of milk, the court said:

"We have no hesitation in holding that when the city was given the power to license, restrain, and regulate the sale of milk it also took power to revoke licenses, and that it might vest such power in the health commissioner with the right to exercise the same summarily and even without notice. McQuillin, Mun. Ord., § 420, and cases cited; *Child v. Bemus,* 17 R. I. 230, 21 Atl. 539, 12 L. R. A. 57." (p. 41.)

No extended discussion is necessary on the question whether the legislature may create an official board and clothe it with power to make reasonable rules for the accomplishment of the purposes of its creation, and prescribe that the violation of such rules, to be afterwards formulated by the board, shall constitute a misdemeanor. That matter is settled. (*The State v. Meyer,* 94 Kan. 647, 146 Pac. 1007.) In *The State v. Crawford,* 104 Kan. 141, 143, 177 Pac. 360, it was said: "Some courts, including our own," have given "countenance to legislation enacted to punish as misdemeanors or otherwise to penalize the breach of rules promulgated or to be promulgated afterwards by some subordinate official body created by the legislature." (citing authorities.) (p. 143).

Practically all the points discussed in the excellent brief submitted by counsel for the defendants may be conceded. If the plaintiff's license was revoked for violation of law or a valid rule of the state board of embalming, he is not entitled to reinstatement by mandamus. But the plaintiff insists that he has not violated the statute and that the rule made by the board is unreasonable and void. The conduct of the plaintiff was not a breach of any express provision of the statute (§ 10309) itself, relied upon by the board when it revoked his license.

Recurring to the acts confessed by plaintiff: At the request of the dead man's relatives the plaintiff went to Little River and brought home the body of Mr. Archibald. The body was not embalmed; it was not tagged with a yellow paster furnished by the local embalmer at Little River. The plaintiff did not procure a removal permit from the registrar of embalmers. The country between Little River and the dead man's home at Geneseo, in the same county, is an ordinary rural community. There were no districts of congested population en route. He brought the dead man home along the rural highways, in an automobile hearse, a vehicle adapted to the dignified and careful conveyance of the dead. The journey, 15 miles, may have taken an hour's time or less. Mr. Archibald had not died of any communicable disease. And yet it seems that this simple, natural, and not unusual mode of bringing home a

dead man's body is a violation of a rule promulgated by the state board of embalming. Thus interpreted, can such a' rule be reasonable? Literally construed, as the board has construed it, the plaintiff, as a licensed embalmer and familiar with the rules, should have replied to the request of the dead man's family: "My dear friends, I sympathize with your natural desires to have Mr. Archibald's body brought home from the hospital at once, but it can't be done. He must first be embalmed *on the spot* where he died. He can be carried nowhere until that is done. Then twelve hours must elapse before I can bring him to you. Furthermore, I must obtain a yellow paster to be tagged on the body. I shall also have some preliminary clerical work to do; there are embalmer's certificates Nos. 1 and 2 to be prepared and forwarded to the state board of embalming. Moreover, I must hunt up the local registrar at Little River and get a ·removal permit from him, before these natural and urgent desires of yours to bring home your dead kinsman can be gratified."

Such cannot be the law in a free state. Casually read, the oppressive exactions of the rule are not readily discernible; but as interpreted by the board and applied to the facts of this case, they are altogether unreasonable. Why all this red tape to bring a dead man home from a hospital 15 miles away, over the rural highways of an agricultural community? Thus interpreted, the dead man's father, brothers or sons would likewise have violated the law and incurred a fine of $50 to $200 if they had dispensed with the services of the local undertaker and had brought the dead man home themselves. Thus interpreted, if a farmer died out in the pasture of his own farm, his sons could not carry him to the house and let him lie on his own bed, while they went to town for a coffin, until he had been embalmed twelve hours—out in the pasture—and labelled and tagged with a yellow paster.

Our official reports are replete with decisions showing it to be the uniform and consistent policy of this court to uphold all the reasonable rules, regulations, orders and decisions of the many official and administrative boards with which the state has equipped itself for the proper discharge of all its governmental concerns; but our duty to declare a rule of an official board to be unreasonable cannot be avoided if it is plainly subject to that objection, or if the rule, reasonable in itself, is given such an unreasonable interpretation as to bring about such a fatuous and exasperating result

as the one here presented. Touching the reasonableness of this particular rule, or the reasonableness of the rule as interpreted and applied to this particular case, the attorney-general's brief, which so ably and effectively answers all the other matters urged by plaintiff, is silent.

In 12 R. C. L. 1273, it is said:

"But if the legislature, in the interests of the public health, enacts a law interfering with the personal rights of an individual, destroying or impairing his liberty or property, it then, under such circumstances, is deemed to become the duty of the courts to review such legislation, and determine whether it in reality relates to and is appropriate to secure the object in view. And in such an examination the court will look to the substance of the thing involved, and will not be controlled by mere forms. When the acts of health authorities, though apparently in the interest of the public health, in no material respect subserve such an end and are actually injurious to individuals, the courts have no . hesitancy in declaring that they have exceeded their powers. It is not to be doubted that the courts have the right to inquire into any alleged abuse of their powers and to restrain them when they transcend the limits of their authority; and the courts will, accordingly, declare invalid any rule or by-law which is to conflict with the state's organic law or antagonistic to the general law of the state, or is unreasonable or opposed to the fundamental principles of justice or inconsistent with the powers conferred upon the boards."

(See, also, *State v. Speyer*, 67 Vt. 502, 48 A. S. R. 832.)

Not only must the courts meet and determine the question of the reasonableness of a rule of an official, administrative body, when such question is squarely presented, but it not infrequently has to determine the reasonableness of more formal enactments, such as city ordinances (*City of Emporia v. Railway Co.*, 94 Kan. 718, 722, 723, 147 Pac. 1095), and state laws (*The State v. Wilson*, 101 Kan. 789, 796, 799, 800, 168 Pac. 679).

In *City of Emporia v. Railway Co.*, supra, Mr. Justice Burch, speaking for the court, said:

"Whether or not an ordinance is void because unreasonable is a question of law. (*Lebanon v. Zanditon*, 75 Kan. 273, 89 Pac. 10), and in determining the question of reasonableness 'The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed are under a solemn duty—to look at the substance of things whenever they enter upon the inquiry whether the [legislature or a city council] has transcended the limits of its authority.' (*City of Lyons v. Cooper*, 39 Kan. 324, 328, 18 Pac. 296.)" (p. 723.)

For the purposes of respectful treatment and decent interment there is vested in the relatives of a dead person, primarily in his

next of kin, a *quasi*-property interest in the body of the deceased (*Bogert v. The City of Indianapolis*, 13 Ind. 134; *Snyder v. Snyder*, 60 How. Pr. [N. Y.] 368; Law of Burial, 4 Bradford's Surrogate Rep. [N. Y.] 503, *et seq.; Pierce v. Proprietors of Swan Point Cemetery*, 10 R. I. 227; *Griffith v. Railroad Company*, 23 S. C. 25), and what the relatives might do themselves they might lawfully authorize the plaintiff to do for them. While the transportation of dead bodies for considerable distances, or by rail, or through populous centers where there is danger of infection or contagion, and the like, wherever the public health or safety may demand it, may be properly subjected to reasonable rules of some official body like the state board of health or the state board of embalming; yet the rule applied here—requiring Mr. Archibald's body to be embalmed for twelve hours, and to be tagged with a yellow paster, and that a permit for its removal be obtained, etc., before it could be brought home was clearly unreasonable and was an undue interference with the rights of the relatives of the deceased and of the plaintiff, their employee. Disregard of such an unreasonable rule gave no just ground to cancel his license to practice his profession. He should be reinstated.

The writ is allowed.