No. 42,136

STATE OF KANSAS, ex rel. JOHN ANDERSON, JR., Attorney General, *Appellant*, v. JOSEPH A. MERMIS, JR., Chairman, REX WOODS, Member, and ED REILLY, Member, STATE ALCOHOLIC BEVERAGE CONTROL BOARD OF REVIEW; and W. E. MURPHY, Director, STATE ALCOHOLIC BEVERAGE CONTROL, *Appellees.*

(358 P. 2d 936)

Opinion filed January 21, 1961.

*Robert E. Hoffman,* assistant attorney general, argued the cause, and *John Anderson, Jr.,* attorney general, *J. Richard Foth,* assistant attorney general, and *A. K. Stavely,* assistant attorney general, were with him on the briefs for the appellant.

*L. M. Cornish, Jr.,* of Topeka, argued the cause, and *Tom Lorson, Jr.,* attorney for Alcohol Beverage Control, *Phillip L. Harris,* attorney for Board of Review, *M. D. Bartlow, George D. Wagstaff, Gary L. Rohrer,* and *Allen F. Gerye,* all of Topeka, were with him on the briefs for appellees.

The opinion of the court was delivered by

JACKSON, J.: This was a suit by the state on relation of the attorney general to enjoin the defendants from carrying out and enforcing the provisions of Chap. 217, Laws of 1959, now appearing as G. S. 1959 Supp. 41-1108 and 41-1109, which statute provides for the fixing of minimum prices on intoxicating liquor. The attorney general alleged that the statute was unconstitutional under the state constitution because it contained an unlawful delegation of legislative power. After the joining of issues by the filing of pleadings, the parties filed a stipulation of facts, and the case, together with briefs, was submitted to the district court and that court in due time upheld the constitutionality of the statute attacked. The attorney general has appealed.

Before entering into the discussion of this case, it appears wise to recall briefly certain historical facts. In 1948, after seventy-eight years of absolute prohibition of the sale of intoxicating liquor, the people adopted the present section 10, Article 15 of the state constitution which reads as follows:

"The legislature may provide for the prohibition of intoxicating liquors in certain areas. Subject to the foregoing, the legislature may regulate, license and tax the manufacture and sale of intoxicating liquors, and may regulate the possession and transportation of intoxicating liquors. The open saloon shall be and is hereby forever prohibited."

The next session of the legislature in 1949, adopted the Kansas Liquor Control Act which now appears as G. S. 1949, 41-101 et seq. This statute created the office of director of alcoholic beverage control and board of review. The act has been amended in some particulars which are not now important, but in 1953, the section now appearing. as G. S. 1959 Supp., 41-1101 was amended. It is there provided that manufacturers or their representatives shall file with the director a written offer to sell their brands to all licensed distributors in the state at the same current price and without discrimination.

It would appear from the statement of agreed facts that, beginning in 1956, the director, by the issuance of certain memoranda, required manufacturers to file suggested prices for distributors to retailers and suggested prices for retailers to customers all in addition to the above prices to distributors required under section 41-1101. After the filing of these "suggested prices," the director required distributors and retailers to adhere to such prices. It also appears that in 1958, the director refused to renew the license of a retailer in Emporia because of sales at less than the prices so fixed. On an appeal to the Lyon county district court by the retailer, the regulations of the director were declared invalid for want of legislative authority, and a renewal of the retailer's license was decreed. There was no appeal from that decree to this court. In December of the same year, the attorney general filed a suit in the Shawnee county district court seeking to enjoin the present defendants from the above described course of conduct. The suit was dismissed by agreement, no doubt, because of the passage of the statute challenged in this action.

The act presently under discussion passed the legislature as Senate Bill No. 296, was approved March 17, 1959, and became effective March 21, 1959. We believe it will be helpful to set out the entire act is it appears in the Laws of 1959. It reads as follows:

"SECTION 1. In addition to the price lists required to be filed with the director by subsection (1) of section 41-1101 of the General Statutes Supplement of 1957, or any acts amendatory thereto, any manufacturer, corporate subsidiary of any manufacturer who markets his products solely through a subsidiary or subsidiaries, rectifier, distiller, fermenter or distributor of alcoholic liquor bottled in a foreign country, shall also file with the director concurrently with the filing of such price lists, suggested case prices for sales by distributors to retailers and suggested consumer bottle and case prices for resale by retailers to consumers.

"SEC. 2. The director is *authorized* to adopt and promulgate, subject to the approval of the board of review, regulations prohibiting sales by licensed distributors and retailers below the suggested prices filed pursuant to section 1 of this act: *Provided, however,* That no such regulation shall be adopted and promulgated except after a public hearing held by the director *and a determination by the director that such a regulation is in the public interest and reasonably necessary for the proper and orderly administration of the Kansas liquor control act: And provided further,* That notice of any such public hearing shall be given by one publication in the official state paper and mailed to every licensed distributor and retailer in this state at least ten (10) days prior to such hearing.

"Sec. 3. This act shall be construed as supplemental to and as part of the Kansas liquor control act.

"Sec. 4. This act shall take effect and be in force from and after its publication in the official state paper." (Italics supplied.)

In considering the above statute, it must be remembered that the position of the dealer in intoxicating liquor is rather unique. He does not have the usual rights of the ordinary business man; he can claim little, if any, protection from the Constitution of the United States. He holds only a privilege granted under and subject to the police power of the state and regulated by the legislature. Attention is directed to the discussion of this subject and the citation of abundant authority in *State v. Payne,* 183 Kan. 396, p. 403, 327 P. 2d 1071.

On the other hand, it must be true that in passing acts to govern the regulation of the liquor traffic under the police power of the state, the legislative acts must be valid legislation and conform to the state constitution. (*Matter of Levine v. O'Connell,* 275 App. Div. 217, 88 N. Y. S. 2d 672, affirmed without opinion, 300 N. Y. 658, 91 N. E. 2d 322; *Ill. Liquor Com. v. Chicago Liquor Store,* 403 Ill. 578, 88 N. E. 2d 15; *Lombardo Wine Co. v. Taylor,* 407 Ill. 454, 95 N. E. 2d 607; *Scarborough v. Webb's Cut Rate Drug Company, Inc.,* (on rehearing) 150 Fla. 772, 8 So. 2d 920; *Schwegmann Bros. v. Louisiana Bd. of A. B. C.,* 216 La. 148, 43 So. 2d 248, 14 A. L. R. 2d 680; and annotation 14 A. L. R. 2d 699, 709.)

The statute now under consideration is somewhat novel. Section 1 (41-1108) only makes it mandatory that manufacturers and their agents file "suggested prices" for distributors to retailers and by retailers to the public. In section 2(41-1109), the statute provides "the director is authorized" to put these "suggested" price schedules in effect as minimum prices if *he himself* finds in fact the regulation of the liquor industry and the proper and orderly administration of the Kansas Liquor Control Act require it, and provided further the board of review also approves. To state the matter another way, the legislature has nowhere in this act found that the public welfare will be enhanced if the police power be used to establish minimum prices for intoxicating liquor sold in Kansas. It has plainly delegated to the director and to the board of review, the authority and discretion to make such a decision.

This is the delegation of a fundamental duty of the legislature. Whether there should be minimum prices set upon liquor is at

least debatable, and it is for the legislature to determine whether such prices are to be imposed under the police power of the state. We are of the opinion, that the police power of the state is for the legislature to apply, and we believe this delegation of the ultimate use of the police power is sufficient to render the statute unconstitutional.

A very similar case is found in *Matter of Levine v. O'Connell,* supra. The courts of New York had no hesitancy in holding the New York statute void under the constitution of that state. In the O'Connell case, opinion beginning on page 220 of the Appellate Division report, the court said:

"We assume, but without deciding, that it would be within the competence of the Legislature to determine that mandatory price-fixing in the sale of alcoholic beverages would be a proper exercise of the police power. The important point for this case is that the Legislature has not done so; on the contrary, paragraph (*b*) of subdivision 12 of section 17 of the Alcoholic Beverage Control Law purports to authorize the State Liquor Authority 'in its discretion' to prohibit 'the sale of any or all alcoholic beverages . . . except pursuant to a fair trade contract entered into in accordance with the provisions of article twenty-four-a of the general business law.'

"Price-fixing in the sale of commodities has always been regarded as one of the most controversial of public questions, both from the viewpoints of economics and constitutional law. *Whether mandatory price-fixing shall be adopted is not a fit subject to be relegated to determination by an administrative board, under the guise of making rules and regulations to facilitate the accomplishment of its purpose to enforce the liquor laws as enacted by the Legislature.*

"Under section 1 of article III of the New York State Constitution, 'The legislative power of this State shall be vested in the Senate and Assembly', and 'This legislative power cannot be passed on to others.' (*Darweger v. Staats,* 267 N. Y. 290, 305.) *It is the function of the Legislature to determine fundamental matters of policy, such as whether or not there should be mandatory price-fixing in the sale of intoxicating liquors.*" (Italics supplied.)

The New York opinion cites a number of somewhat similar cases, and attention is directed to the expressed approval of the O'Connell case in the annotation in 14 A. L. R. 2d 699, 708. However, we are content to believe that it is fundamental that the legislature may not leave to the discretion of administrative officials the question of the application of the police power in a certain field. This is quite different from the usual method in which the legislature determines that a danger to public welfare should be regulated under the police power, and then assigns to administrative officers the matter of working out regulations under guide posts announced by the legislature.

The state urges still another alleged invalid delegation of legislative power to exist in the statute under consideration. It is urged that the statute in effect delegates to the manufacturers or to their agents the power to fix the minimum prices charged by distributors and by retailers for intoxicating liquor sold in Kansas.

An examination of the statute shows that in section 2 of the act, the sole actual authority granted to the director is as follows:

"The director is authorized to adopt and promulgate, subject to the approval of the board of review, regulations *prohibiting sales* by licensed distributors and retailers *below the suggested prices filed pursuant to section 1* (41-1108) of this act: *Provided however,* (the director find that the police power of the state should be so exercised)."

Nowhere in the statute is the director given any authority over the reasonableness of the prices suggested. If he, in his discretion, determines that it will enhance the public interest and the proper and orderly administration of the Kansas liquor control act to have minimum prices for liquor, he may accept the suggested prices. That is as far as the statute goes in defining the duties of the director.

We have already decided *supra* that the delegation to the director of the authority to determine whether the police power should be applied in this matter constituted an unlawful delegation of legislative power reposed in the legislature by article 2, section 1, of the state constitution. When section 2 of the act is closely examined, the director is authorized only to adopt as binding "suggested prices" fixed by private persons usually residing outside of the state.

In 1919, the court speaking through the then Mr. Justice Dawson in the case of *State v. Crawford,* 104 Kan. 141, 177 Pac. 360, 2 A. L. R. 880 said in the third paragraph of the syllabus:

"The 'national electrical code' is a set of rules relating to electrical wiring, etc., promulgated by a body of private individuals and voluntary unofficial organizations which meets occasionally throughout the United States. These rules are revised from time to time. A statute requiring the owners of theaters to make all their electrical wiring conform to the 'national electrical code' is an attempt to delegate the legislative power of this state, and is therefore unconstitutional."

Again in the late case of *Quality Oil Co. v. du Pont & Co.,* 182 Kan. 488, 322 P. 2d 731, which concerned the constitutionality of the Kansas Fair Trade Act, it was said in the third paragraph of the syllabus:

"The legislature is powerless to clothe a private person with power to fix minimum resale prices binding upon all who acquire and sell his trade-mark commodity with whom he has no direct contractual relation. An attempt to confer such power is an attempt to delegate legislative power, which is futile."

We have heretofore mentioned the fact that in the statute under discussion, the director of liquor control is nowhere given any authority to consider whether the "suggested prices" are reasonable, and that no standards or guide posts are set out in the statute to govern his decision. In some of the regulations of the director may be found some standards which he has adopted to guide, perhaps, the manufacturers in fixing the "suggested prices." It would seem impossible for these standards to help the statute. We are advised that the director and board of review have refused to approve certain prices from time to time in the past but no evidence is submitted in the record of such action, and we cannot base our decision upon the statement in the brief in view of the wording of the statute in question.

Appellees have cited many cases from other jurisdictions upholding the setting of minimum prices upon intoxicating liquor. The court has carefully considered all of these cases. In the greater number of these cases, the statute involved was quite different from the statute here involved. In all of the cases a different state constitution than our own was under discussion, and this court has the duty of finally construing the Kansas constitution.

Appellees especially urge the holding of the Ohio courts in *Winery Inc. v. Board,* 167 Ohio St. 61, 146 N. E. 2d 430, and we have also studied the illustrative case of *Blackman v. Bd. of Liquor Control,* 95 Ohio App. 177, 113 N. E. 2d 893, appeal dismissed, 158 Ohio St. 368, 109 N. E. 2d 475. The Ohio liquor control system differs radically from that of Kansas. In the first place, all distilled liquor is sold in state owned and controlled stores, and the Ohio statutes further provide that the liquor control board shall fix markups for distributors and retailers of wine, after establishing the cost of the merchandise.

The trial court relied upon the case of *Richards v. Coal Co.,* 104 Kan. 330, 179 Pac. 380, in upholding the constitutionality of the statute. In that case, the statute in question absolutely forbade the use of dynamite or other explosives in any coal mine in the state, but the statute provided that the employer and employees might agree as to rules for the safe use of explosives and that such

rules should be submitted to and approved by the state mine inspector who, it seems, would issue a written permit allowing the use of explosives under the rules. We think that the legislature could provide that the mine inspector could, under the rules of safety, pass upon the rules for the use of dynamite which had been agreed upon by the mine employer and employees.

There is nothing to be gained by the further lengthening of this opinion. The court is firmly convinced that L. 1959, Ch. 217 (G. S. 1959 Supp. 41-1108 and 41-1109) contains two unauthorized delegations of legislative power in contravention of Art. 2, sec. 1 of the constitution of Kansas and is therefore invalid. This decision, of course, makes regulation 14-4-13a, promulgated by the director, inoperative since he has no legislative authority to provide for minimum prices on intoxicating liquor. The court is not here deciding that the legislature may not in its wisdom enact a proper statute under the police power of the state fixing minimum prices upon intoxicating liquor, if it shall determine that such statute is required.

The decision of the district court appealed from must be reversed. It is hereby so ordered.