No. 51,935

ASHOK K. GUMBHIR, *Appellant,* v. KANSAS STATE BOARD OF PHARMACY, *Appellee.*

(618 P.2d 837)

Opinion filed November 1, 1980.

*J. Nick Badgerow,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, argued the cause and was on the brief for the appellant.

*Robert E. Davis,* of Davis, Davis, McGuire & Thompson, Chartered, of Leavenworth, argued the cause, and *John F. Thompson,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This is an appeal from an order of a district court

upholding the action of the Kansas State Board of Pharmacy (the Board) in refusing to permit Ashok K. Gumbhir either to take the examination for registration as a pharmacist or to be admitted by reciprocity. The claim of Mr. Gumbhir is that a certain provision in the pharmacist registration statute, K.S.A. 1979 Supp. 65-1631, is constitutionally impermissible. The Board interprets the statute so as to permit no one to take the examination for registration as a pharmacist or to be admitted by reciprocity if such person does not have an undergraduate degree from a school in the United States accredited by the American Council on Pharmaceutical Education (ACOPE). ACOPE is a nongovernmental agency organized exclusively for educational and other nonprofit purposes. This nongovernmental agency attempts to approve and accredit only schools of pharmacy located in the United States. No pharmacist who has obtained his or her undergraduate degree from a school outside the United States can hope to become a registered pharmacist in the State of Kansas under the Board's interpretation of this statute.

The facts leading to the present appeal were stipulated by the parties. Mr. Gumbhir manages and is part owner of a pharmacy in Overland Park, Johnson County, Kansas. He is a citizen of the United States and a resident of the State of Missouri. He graduated and received a bachelor's degree in pharmacy from Punjab University in Chandrigarh, India, in 1960.

The plaintiff on coming to the United States graduated and received a master of science degree in pharmacy from the University of Minnesota in 1968. The undergraduate pharmaceutical program of the University of Minnesota is, and was at all times relevant, accredited by ACOPE and is recognized and approved by the Board, but not its graduate program.

The plaintiff graduated and received a Ph.D. degree in pharmacy administration from Ohio State University in 1971. The undergraduate program of Ohio State University is and was at all times relevant accredited by ACOPE and recognized and approved by the Board, but not its graduate program. ACOPE does not approve any graduate programs.

The plaintiff was registered as a licensed pharmacist in the State of Ohio by examination in 1970, and presently holds a license to practice pharmacy in the State of Ohio. He was regis-

tered as a pharmacist in the State of Missouri by reciprocity in 1974, and holds a license to practice pharmacy in the State of Missouri.

The plaintiff applied for registration in the State of Kansas by examination, by submitting the required application and fee in accordance with K.S.A. 1979 Supp. 65-1631(*b*). The plaintiff also applied for registration in Kansas by reciprocity by submitting the required application and fee in accordance with K.S.A. 1979 Supp. 65-1631(*d*)(*g*) based on prior registrations in both Ohio and Missouri.

The Board denied both applications for registration on the basis the statute, K.S.A. 1979 Supp. 65-1631, requires every applicant in Kansas to be a graduate of a college accredited by ACOPE. ACOPE accredits only undergraduate schools in the United States. Punjab University is not in the United States. Plaintiff filed this action in the district court after all administrative remedies had been exhausted and all prerequisites to the jurisdiction of that court had been fulfilled.

The statute regulating the registration of pharmacists, K.S.A. 1979 Supp. 65-1631, in pertinent part provides:

"(*a*) It shall be unlawful for any person to practice as a pharmacist in this state, unless such person is registered by the board as a pharmacist. *Every applicant* for examination and registration as a pharmacist *shall be* of good moral character and temperate habits, *a graduate of a school or college of pharmacy or department of a university accredited by the American council on pharmaceutical education* and recognized and approved by the board, and shall file proof satisfactory to the board, substantiated by proper affidavits, of a minimum of one year of pharmaceutical experience, acceptable to the board, under the supervision of a registered pharmacist and shall pass an examination by the board. Pharmaceutical experience as required in this section shall be under the supervision of a registered pharmacist and shall be predominantly related to the dispensing of prescription medication, compounding prescriptions, preparing pharmaceutical preparations, and keeping records and making reports required under the state and federal statutes." Emphasis supplied.

The portions of the statute which relate to applications for registration on both examination and on reciprocity require, as a condition precedent to taking the examination or to receiving registration by reciprocity, that the applicant have the required education prescribed in subsection (*a*), *i.e.*, graduation from a school or pharmacy accredited by ACOPE.

The primary attack launched against the constitutionality of this statute is based upon the claim that 65-1631(*a*) of the Kansas

Pharmacy Act constitutes an unlawful delegation of legislative authority to a nongovernmental agency, ACOPE, which delegation is impermissible under the Constitution of the State of Kansas.

Article 2, Section 1 of the Constitution of the State of Kansas provides:

"The legislative power of this state shall be vested in a house of representatives and senate."

This constitutional provision prevents usurpation of legislative authority by other departments of government as well as by a nongovernmental agency or a private individual. The authority to make obligatory rules and provide penalties for breach of said rules belongs to the legislature. An unlawful delegation of legislative power is contrary to the public policy expressed in the Constitution. *State v. Crawford,* 104 Kan. 141, 177 Pac. 360, 2 A.L.R. 880 (1919).

The *Crawford* case dealt with a statute which provided that all electrical wiring shall be in accordance with the national electric code. The court found the code could be changed sporadically by the National Fire Protective Association which met only occasionally, and even then might meet anywhere in North America. It was held the statute was constitutionally impermissible as amounting to an unlawful delegation of legislative power to the National Fire Protective Association, a nongovernmental association. The *Crawford* court stated:

"If the legislature desires to adopt a rule of the national electrical code as a law of this state, it should copy that rule and give it a title and an enacting clause and pass it through the senate and the house of representatives by a constitutional majority and give the governor a chance to approve or veto it, and then hand it over to the secretary of state for publication." 104 Kan. at 144.

In *Quality Oil Co. v. duPont & Co.,* 182 Kan. 488, 322 P.2d 731 (1958), the court dealt with a fair trade statute. The statute authorized a trademark owner and a retailer to agree upon a price for an article which was then to be binding between not only the parties agreeing but also any other persons who later were notified of said price. The court held this statute to be an unconstitutional delegation of legislative power, saying that the power to fix rates or prices upon all citizens is a legislative power and the legislature may not abdicate its function and delegate its legislative powers to others.

In *State, ex rel., v. Mermis,* 187 Kan. 611, 358 P.2d 936 (1961), it is pointed out that legislative authority in limited cases may be delegated to *governmental agencies* if, and only if, adequate guidelines are set out in the statute to clearly limit and define the conditions and the nature of the authority to be exercised. In *Mermis* a statute which delegated to the director of alcoholic beverage control the authority and discretion to set minimum prices of intoxicating liquors to be sold in Kansas, without providing guidelines, was held to be an unlawful delegation of legislative authority. The decision was based upon *Crawford* and *Quality Oil.*

The case of *Poe v. Menghini,* 339 F. Supp. 986 (D. Kan. 1972), dealt with delegation of authority to the Joint Commission on Accreditation of Hospitals so the commission might determine what hospitals could perform abortions. The opinion of Judge Theis contains some very appropriate language which bears upon our present case:

"This provision suffers from a second constitutional defect. The JCAH is a private, non-profit corporation with headquarters outside the State of Kansas. To this private concern the Kansas Legislature has delegated the power to promulgate standards binding on Kansas hospitals, at least if therapeutic abortions are to be performed in their facilities. In the event an unaccredited hospital, such as the Douglass Hospital, lends its facilities to the performance of therapeutic abortions, it may be subject to criminal prosecution. Many years ago, the Kansas Supreme Court defined the following limitation on the legislative power:

" 'The legislature cannot delegate to private individuals and private associations the power to make obligatory rules concerning the management and care of property, nor can it provide that the breach of such rules shall be a penal offense. Kansas v. Crawford, 104 Kan. 141, 177 P. 360 (1919).'

"This rule is compatible with present federal constitutional law. Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1935). In this case, the Kansas Legislature has acted in apparent disregard of this constitutional limitation on their powers of delegation. And particularly since the result of this delegation has been the infringement of a fundamental right, the delegation violates the Due Process Clause of the Fourteenth Amendment." 339 F. Supp. at 994, 995.

In *State, ex rel., v. Gleason,* 148 Kan. 1, 79 P.2d 911 (1938), a question was raised as to the constitutionality of a provision of the Osteopathic Practice Act of Kansas. The act provided that educational requirements for an osteopath applying for examination and registration should include graduation from an osteopathic school or college of good repute. The definition of such a college was contained in the statute and required it to be a college in which the requirements for graduation "shall be in no partic-

ular less than those prescribed by the American Osteopathic Association." See G.S. 1935, 65-1202. The court in *Gleason* held there was no unlawful delegation of legislative authority. The standards of the American Osteopathic Association mentioned in the statute were merely used as a guideline or standard to be used by the state board and the delegation of authority was to the state board, not to the American Osteopathic Association.

In *Sutherland v. Ferguson,* 194 Kan. 35, 397 P.2d 335 (1964), the healing arts statute came under constitutional attack by the chiropractors who claimed it failed to lay down guidelines and standards. G.S. 1961 Supp. 65-2825 required the board to prepare and keep up to date a list of accredited healing arts schools. The accreditation was placed in the hands of the State Board of Healing Arts. There was no claim that the board abdicated its accreditation responsibilities to some other nongovernmental association or group. G.S. 1961 Supp. 65-2876 defined an accredited school of chiropractic to "be a legally incorporated school teaching chiropractic which the board shall determine to have a standard not below that of the national college of chiropractic of Chicago" and all such schools had to be approved first by the board before a graduate could take the examination. Again this court held there was no impermissible delegation of legislative power. The National College of Chiropractic of Chicago was merely used as a guide or standard to be followed by the state board.

The appellant, Mr. Gumbhir, cites additional cases from other states in which the courts have examined similar statutes. In those cases the legislatures have delegated some discretion and authority to state boards. The cases follow the general trend of the Kansas cases. Several cases rely on our early case of *State v. Crawford,* 104 Kan. 141. After reviewing these cases it appears the legislature may enact general provisions for regulation and grant to *state agencies* certain discretion in filling in the details, provided it fixes reasonable and definite standards to govern the exercise of such authority. *State, ex rel., v. Urban Renewal Agency of Kansas City,* 179 Kan. 435, 440, 296 P.2d 656 (1956); *State ex rel. Schneider v. City of Topeka,* 227 Kan. 115, 125, 605 P.2d 556 (1980).

However, a strict rule is applied when the delegation of authority to some outside, nongovernmental agency is attempted.

The legislative power of this state is vested in the legislature and the legislature is prohibited from delegating legislative powers to *nongovernmental associations or groups. State v. Crawford,* 104 Kan. 141; see also *Coffman v. State Bd. of Examiners,* 331 Mich. 582, 50 N.W.2d 322 (1951); *Murtha v. Monaghan,* 7 Misc. 2d 568, 169 N.Y.S.2d 137, *aff'd* 5 App. Div. 2d 695, 169 N.Y.S.2d 1010 (1957); *Gold v. S. C. Bd. of Chiropractic Exam.,* 271 S.C. 74, 245 S.E.2d 117 (1978).

The Board does not attempt to distinguish the cases relied on by Mr. Gumbhir, except for the *Poe* case. The Board cites and relies on a myriad of cases from other jurisdictions in which the courts have quite uniformly rejected the unlawful delegation argument in cases where the admission of lawyers to practice law may have been limited to those graduating from law schools accredited by the American Bar Association. However, the cases relate to limitations imposed by the courts, not by the legislatures. Some of these states have requirements similar to that of Kansas for the basic qualifications for applicants for admission to practice. Rule 704 of the Rules of the Supreme Court provides:

"[E]ach applicant shall satisfy the Admissions Board that he has completed a full course of study in both an accredited college and an accredited law school and that he has been granted and holds a baccalaureate degree and a Bachelor of Laws or Juris Doctor degree or their equivalent or higher degrees. . . . The standard for determining sufficiency of any educational requirement, or of courses of study leading to the granting of degrees above mentioned, shall be that fixed and recognized by the University of Kansas." 225 Kan. cxl, cxli.

Therefore in Kansas, what is an accredited college or law school depends on a standard, the University of Kansas, and the final determination as to required educational requirements is left to the board of admissions, which is an arm of the court. The cases involving the admission of attorneys are not too persuasive on the question of unlawful delegation of legislative authority, for the licensing and the control of attorneys are not based upon legislative authority. The licensing and control of attorneys, traditionally, has been recognized and exercised as an inherent power of the courts in the administration of justice. The judicial article of the Constitution of the State of Kansas, Article 3, Section 1, places the judicial power of this state in one court of justice; and the Supreme Court is given administrative authority over all courts in this state. The inherent power of the Supreme Court in licensing and controlling attorneys was recognized by

the legislature in K.S.A. 7-103 where it is stated this court may make such rules as it may deem necessary for the examination of applicants for admission to the bar of this state and for discipline and disbarment of attorneys.

Many of the cases relating to the licensing requirements for attorneys are in states which follow similar rules to those adopted in Kansas. In Kansas a certain educational standard is set forth as a guideline for use by the board of admissions. This would not be an unlawful or unreasonable delegation when it is placed in the hands of a board appointed by the court which has and retains the primary authority.

By way of comparison of the educational qualifications required of applicants for registration and certification as a pharmacist and those requirements for licensing by the Board of Healing Arts, we note that the statute, K.S.A. 1979 Supp. 65-2865, authorizes the Board of Healing Arts to promulgate all necessary regulations to be filed with the revisor of statutes. The rules and regulations adopted by the board which have the effect of law include K.A.R. 1980 Supp. 100-6-2. This regulation requires an applicant for license to be "[a] graduate of an approved healing arts school or college" and:

"(A) A doctor of medicine and surgery shall present proof to the board that he or she has completed a postgraduate training or residency training program of not less than one (1) year's duration *approved by the council of education of the American medical association or its equivalent* in the year in which he or she took such training or present proof that he or she has completed two (2) year's employment under a fellowship license." Emphasis supplied.

We note a standard is used of the council of education of the American medical association or its equivalent. K.A.R. 100-6-3 provides:

"The board shall prepare and keep up-to-date a list of accredited healing arts schools but no school shall be approved without the formal action of the board."

K.A.R. 1980 Supp. 100-6-5 covers applications of foreign graduates for examination and requires proof that the foreign school or college from which the applicant graduated meets the requirements set out in K.S.A. 65-2874 as follows:

"An accredited school of medicine for the purpose of this act shall be a school or college which requires the study of medicine and surgery in all of its branches, which the board shall determine to have a standard of education not below that of the university of Kansas school of medicine. All such schools shall be approved by the board."

Again we note a standard of education is set of not below that of the University of Kansas School of Medicine. The authority to approve the educational qualifications remains with the board.

Now, where does this lead us so far as K.S.A. 1979 Supp. 65-1631(*a*) is concerned? The statute which regulates registration of pharmacists requires every applicant for examination to be a graduate of a school or college of pharmacy "accredited by the American council on pharmaceutical education and recognized and approved by the board." The wording of this statute and the interpretation placed upon this provision by the Pharmacy Board has the effect of delegating to ACOPE through its accreditation process the standards of education required before registration is permitted. ACOPE is not a governmental agency. It is a private nonprofit association having full control over its own accreditation requirements. The arbitrary and unreasonable nature of its action in its accreditation process is apparent in this case. No foreign schools receive ACOPE accreditation. No graduate schools either in or out of the United States are accredited.

The provision in K.S.A. 1979 Supp. 65-1631(*a*) which restricts approval of the necessary educational qualifications for examination and registration of pharmacists in this state to those individuals who have graduated from schools of pharmacy accredited by the American Council on Pharmaceutical Education, a nongovernmental agency, is constitutionally impermissible. The Kansas State Board of Pharmacy, which has been given general authority to register pharmacists, if bound by said provision, would not have the ultimate authority. That authority would be in ACOPE, a nongovernmental association which makes its own standards for accrediting those schools whose graduates may become registered pharmacists in Kansas.

The provision of the statute referred to above constitutes an unlawful delegation of legislative authority to a nongovernmental association and is constitutionally impermissible under Article 2, Section 1 of the Constitution of the State of Kansas.

The closing provision of the State Pharmacy Act, K.S.A. 1979 Supp. 65-1649, provides:

"If any clause, sentence, paragraph, section or part of the pharmacy act of the state of Kansas or the application thereof to any person or circumstances shall for any reason be adjudged by any court of competent jurisdiction to be unconstitu-

tional or invalid, such judgment shall not affect, impair or invalidate the remainder thereof, and the application thereof to other persons or circumstances, but shall be confined in its operation to the clause, sentence or paragraph, section or part thereof involved in the controversy, in which such judgment shall have been rendered and to the person or circumstances involved. It is hereby declared to be the legislative intent that such act would have been enacted had such unconstitutional or invalid provisions not been included."

A legislative intention to uphold and retain a part of a legislative act if a portion thereof is held to be unconstitutional and void should be upheld when it appears the remaining portion of the act would have been enacted had such unconstitutional or invalid provisions not been included. *State v. Next Door Cinema Corp.,* 225 Kan. 112, Syl. ¶ 8, 587 P.2d 326 (1978); *State, ex rel., v. City of Overland Park,* 215 Kan. 700, 711, 527 P.2d 1340 (1974). Such an intention is clearly expressed. The phrase which is constitutionally impermissible as an unlawful delegation of legislative power in K.S.A. 1979 Supp. 65-1631 is "accredited by the American council on pharmaceutical education and." By striking this phrase the balance of the statute appears proper. The removal of said portion would not appear to affect, impair, or invalidate the remainder thereof. The valid portion of the statute remaining can then be read and applied as follows:

"Every applicant for examination and registration as a pharmacist shall be of good moral character and temperate habits, a graduate of a school or college of pharmacy or department of a university . . . recognized and approved by the board, and shall file proof satisfactory to the board, substantiated by proper affidavits, of a minimum of one year of pharmaceutical experience . . . ."

Having decided this portion of the statute is constitutionally impermissible because it unlawfully delegates legislative authority to a nongovernmental agency, it is not necessary for us to examine the other constitutional questions and issues raised by appellant concerning the refusal of the Board to permit examination and registration. Such questions and issues are raised merely as additional grounds for reversing the decision of the district court and of the Board.

We reverse the judgment of the district court and set aside the order of the Kansas Board of Pharmacy denying Ashok K. Gumbhir's application to take the examination for registration as a pharmacist, and denying his application to be admitted by reciprocity. The Kansas Board of Pharmacy is directed to reconsider these applications in accordance with what has been said in the foregoing opinion.