The Honorable Ron Thornburgh Secretary of State Memorial Hall, First Floor 120 S.W. 10th Street Topeka, Kansas 66612
Tim Winters, Chairman Information Network of Kansas 632 S.W. Van Buren, Suite 100 Topeka, Kansas 66603
Dear Secretary of State Thornburgh and Chairman Winters:
As members of the Board of Directors for the Information Network of Kansas, Inc., you request our opinion regarding whether any member of the Board may designate a representative who will attend Board meetings in the member's stead. You also ask whether such a designated representative may cast votes pursuant to proxy on matters that are presented to the Board and, if so, whether the proxy must be issue specific. This opinion addresses only the positions of the association members and the Secretary of State. An opinion regarding the cabinet secretaries, President of Kansas, Inc., and the Director of Information Systems and Communications will be issued at a later date.
According to the information provided:
"It has been the practice of the Board since 1995, when adopted as part of the organization's bylaws, to allow Board members to appoint a designee to appear in the member's absence and to act on the member's behalf. The Board generally meets monthly and members who cannot attend the meetings due to other obligations or calendar conflicts have been allowed to send a representative in the member's place. This practice has been used most often, but not exclusively, by the public officers on the [B]oard whose official obligations often interfere with the [B]oard's schedule of meetings."[1]
Legal counsel for the Board of Directors has advised the Board that INK is a corporation governed by a board of directors, the members of which have a personal, non-delegable obligation to attend board meetings.[2]
The Board has been further advised that INK is a body politic, with the members of the Board under an obligation to personally perform the duties placed upon the entity, much the same as members of a board of trustees for either a hospital district or county hospital or members of a board of county commissioners.[3] There is disagreement between legal counsel for INK and for the Secretary of State regarding whether authority conferred upon the Secretary of State under K.S.A. 75-412 allows the Secretary of State to designate a representative for the purpose of attending Board meetings.[4]
INK was created pursuant to the Information Network of Kansas Act.[5]
The purpose for INK is in part to "[p]rovide electronic access for members of the public to public information of agencies via a gateway service. . . ."[6] INK is "a body politic and corporate . . . constituted as a public instrumentality" that exercises "authority and powers . . . deemed and held to be the performance of an essential governmental function."[7]
"INK shall be governed by a board consisting of 10 members as follows:
"(1) The president of Kansas, Inc.;
"(2) the secretary of state;
"(3) two members who are chief executive officers of agencies of the executive branch, appointed by the governor. . .;
"(4) one member appointed by the governor from a list of three Kansas bar association members submitted by such association. . .;
"(5) three members from other user associations of a statewide character appointed by the governor from a list of not less than nine individuals and their respective user associations compiled initially by the president of Kansas, Inc. and thereafter by the board of INK and submitted to the governor. . .;
"(6) one member appointed by the governor from a list submitted by the president of the Kansas public libraries association and comprised of three librarians employed by public libraries. . .; and
"(7) the director of information systems and communications who shall serve as a nonvoting member."[8]
The Board is to "[s]erve in an advisory capacity to the secretary of administration, division of information services and communications and other state agencies regarding the provision of state data to the citizens and businesses of Kansas"[9] and to "develop charges for the services provided to subscribers, which include the actual costs of providing such services."[10]
The obligations of the members of the Board are determined by the type of corporation INK is. "Corporations may be classified generally as public or private, the distinction having reference to the powers of a particular corporation and to the purpose of [sic] its creation."[11]
"In the case of private corporations, the legislature has no general right to inspect, regulate, control and direct the corporation, its funds, and franchises."[12] Conversely, "[p]ublic corporations are created for public purposes connected with the administration of the government, and the interests and franchises pertaining thereto are the exclusive property of the government itself."[13]
The purpose for INK is not to "carry on a business for profit"[14]
that has been "founded by and composed of private individuals. . . ."[15]
Rather, INK was established to perform the governmental functions set forth in K.S.A. 74-9302. INK is a public corporation,[16] not a private or business corporation. As such, it is not subject to all the same rules and principles as a private or business corporation.
Pursuant to the Kansas Constitution, the Legislature has the authority to "provide for the election or appointment of all officers and the filling of all vacancies not otherwise provided for in this constitution."[17]
"The creation of various offices and departments of government not otherwise provided for in the Kansas Constitution is a legislative function. It is also a legislative function to determine the qualifications of the officers and by whom they shall be appointed and in what manner they shall be appointed. The Kansas Constitution contains no limitation on who may be appointed, and there is no constitutional restriction on the legislature exercising its power as it shall see fit."[18]
Further:
"Article 2, Section 1 of the Kansas Constitution provides that the legislative power is vested in the Legislature. Such power cannot be delegated to private individuals or entities. Gumbhir v. Kansas State Boardof Pharmacy, 228 Kan. 579 (1980). . . . Legislative power includes the power to appoint and the authority to make rules and provide penalties for their breach.Gumbhir, supra; Sedlak v. Dick, 256 Kan. 779 (1995);Vakas v. Kansas State Board of Healing Arts, 248 Kan. 589
(1991); State v. Crawford, 104 Kan. 141 (1919); VanSickle v. Shanahan, 212 Kan. 426, 440 (1973)."[19]
Through K.S.A. 74-9303, the Legislature itself has appointed the president of INK, the Secretary of State, and the director of information systems and communications to the Board for INK and conferred upon the Governor the legislative power to appoint the other seven members of the Board. K.S.A. 74-9301 et seq. do not expressly confer upon an individual member of the Board the authority to appoint a person who may serve in the absence of the member. Therefore, we review whether there is express or implied authority elsewhere that allows a member to appoint a person who may serve in the member's absence.
 ASSOCIATION MEMBERS
Subsections (b)(4) and (b)(5) of K.S.A. 74-9303 provide for the appointment by the Governor of persons who represent nongovernmental associations. While the Legislature may provide for the appointment of a private individual to a governmental board, the actual authority to appoint may not be delegated to a private individual.[20] The Legislature has not attempted to authorize a private individual to make an appointment to a position on the Board of Directors for INK. The persons appointed by the Governor pursuant to subsections (b)(4) and (b)(5) of K.S.A. 74-9303 may not appoint representatives to the Board of Directors of INK to serve in their absence.
Subsection (b)(6) requires the appointment by the Governor of an employee of a public library whose name is one of three submitted by the president of the Kansas Public Libraries Association. We have been unable to find a statute that expressly or by implication authorizes the person appointed pursuant to subsection (b)(6) of K.S.A. 74-9303 to appoint another individual to serve in the member's absence.
 SECRETARY OF STATE
The Secretary of State is a "constitutional officer of the executive department" of the State, chosen by the electors of Kansas at an election conducted every four years.[21] The authorities, duties and obligations of the Secretary of State are prescribed in part by state statute.[22]
Among the authorities and powers expressly conferred upon the Secretary of State is the authority to appoint assistants and deputies who may assist the Secretary of State in performing the duties and obligations of office.
"The secretary of state is hereby authorized to appoint an assistant secretary of state and five deputy assistant secretaries of state, one of whom shall be an attorney at law and who shall serve as legal counsel for the secretary of state. The assistant and each deputy assistant shall take the oath of office required of public officers. In the absence of the secretary ofstate, such assistant and deputy assistants shall havecharge of the office, and each may perform the dutiesdevolved by law upon such secretary, except as otherwiseprovided; but in every case they shall act in the name of their principal, and sign and attest all papers and certificates in the name of their principal, by themselves as assistant secretary or deputy assistant secretary. The secretary of state may appoint other unclassified employees as may be necessary to discharge the duties of office and as are authorized by law."[23]
Legal counsel for INK distinguishes the role of the Secretary of State as member of the Board of Directors for INK from other duties and obligations placed upon the Secretary of State. The arguments of legal counsel for INK are thus:
"[T]he language of K.S.A. 75-412 says that the assistant secretary and deputies shall have charge of the office in the absence of the secretary. The statute, however, does not provide any positive language that the secretary can appoint his assistant secretary or deputies to any boards that are not part of the office of secretary of state upon which he is designated to sit, or to delegate specific discretionary power to such assistant or deputies for exercising such power on such boards. As a result, there is no explicit authority in the statute for the secretary of state to appoint a proxy to vote for him. . . .
"It is essential to understand that the role of a Board member of INK is not a part of the duties of the Secretary of State . . . or any of the other offices which have been discussed. The duties of those offices are enumerated in statutes which govern those offices and the respective departments. I do not argue that the duties of the Secretary of State . . . can be delegated to others within the Secretary of State's office. . . . The point is that [the Secretary of State is] serving on the Board of INK `ex officio,' that is, `by reason of office.' This is distinctly different than serving on the Board of INK as part of the duties of [that] office. The fact that the INK statute does not specifically state that members of the Board cannot authorize another to act in their place, while the statute establishing the Information Technology Council specifically prohibits delegation to a proxy is irrelevant. The Information Technology statute was adopted at a later date and simply restated the extant law. The law with respect to proxy voting on the Board of INK is well settled and did not need to be stated."[24]
We respectfully disagree with legal counsel's view that service on the Board of Directors for INK is not one of the duties of office of the Secretary of State. Pursuant to K.S.A. 74-9303(b)(2), the Secretary of State is a member of the Board. The Secretary's membership is not based on possessing any personal aptitude, knowledge, or skills. The only qualification for the Secretary to meet for membership is to be the Secretary. The Legislature has expressed no concerns regarding the personal identity of the person serving on the Board pursuant to subsection (b)(2). The ability and obligation of the person to serve begins on the day the person takes the oath of office as Secretary of State and ends on the day the person ceases to hold the office of Secretary of State. As such, the Legislature has made serving on the Board of Directors for INK an official duty of the Secretary of State.
The authority conferred under K.S.A. 75-412 upon the Secretary of State allows the appointment of an assistant secretary of state and five deputy assistant secretaries of state who, "[i]n the absence of the secretary of state, . . . shall have charge of the office, and . . . may perform theduties devolved by law upon such secretary, except as otherwise provided. . . ."[25] The rules of statutory construction provide guidance in determining the extent of the authority conferred upon the Secretary of State.
"The fundamental rule of statutory construction is that the intent of the legislature governs. In determining legislative intent, courts are not limited to consideration of the language used in the statute, but may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. Words in common usage are to be given their natural and ordinary meaning. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be."[26]
The Secretary of State has since 1879 had the authority to appoint an assistant secretary of state who in the absence of the Secretary has charge of the office and who may perform the duties assigned to the Secretary.[27] The ability of the assistant secretary of state to perform any such duties has always been subject to the condition "unless otherwise provided."[28] The ability of the assistant secretary of state or deputy assistant secretary of state to perform the duties of the Secretary does appear rather expansive, however, the wisdom of conferring such authority is a matter for the Legislature to determine. The Legislature is presumed to know the law.[29] The Legislature has not curtailed the ability of an assistant secretary of state or deputy assistant secretary of state to attend meetings of the Board of Directors for INK, a duty devolved upon the Secretary.[30] Therefore, an assistant secretary of state or deputy assistant secretary of state may attend Board meetings in the place of the Secretary. Such officers are usually vested with all the power and authority of the principal[31]
with their acts being considered as acts of the principal for which the principal is responsible.[32] As such, the assistant secretary of state or deputy assistant secretary of state may discuss and cast votes on issues coming before the Board of Directors for INK, subject only to any restrictions placed by the Secretary upon the exercise of that authority. Because the Secretary of State has statutory authority to appoint an assistant secretary of state and deputy assistant secretaries of state who may perform the duties assigned to the Secretary, it is not necessary to review whether implied power to do so exists.
In review, persons appointed to the Board of Directors for INK by the Governor pursuant to subsections (b)(4), (b)(5), and (b)(6) of K.S.A.74-9303 as representatives of designated associations may not appoint representatives to serve in their absence from meetings of the Board of Directors for INK. Service on the Board by the Secretary of State is a duty of the office of Secretary of State. Pursuant to authority conferred under K.S.A. 75-412, the Secretary of State may appoint an assistant secretary of state or deputy assistant secretary of state who may serve on the Board in the absence of the Secretary. As proxy for the Secretary of State, the assistant secretary of state or deputy assistant secretary of state may discuss and cast votes on issues coming before the Board of Directors for INK, subject only to any restrictions placed by the Secretary of State upon the exercise of that authority.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] Correspondence, Tom Winters, February 21, 2002. See also
Correspondence, Ron Thornburgh, February 15, 2002.
[2] Correspondence, H. Philip Elwood, February 28, 2002.
[3] Id.
[4] Id.
[5] K.S.A. 74-9301 et seq.
[6] K.S.A. 74-9302(a).
[7] K.S.A. 74-9303(a).
[8] K.S.A. 74-9303(b).
[9] K.S.A. 74-9304(a)(1).
[10] K.S.A. 74-9304(a)(3).
[11] 18 Am.Jur.2d Corporations § 30 (1985).
[12] 18 Am.Jur.2d Corporations § 13 (1985).
[13] 56 Am.Jur.2d Municipal Corporations, Counties and Other PoliticalSubdivisions § 12 (2000).
[14] Black's Law Dictionary 179 (1979) (definition of "business corporation").
[15] Black's Law Dictionary 307 (1979) (discussion in the definition of "corporation" when distinguishing public corporations and private corporations).
[16] "An artificial person (e.g. municipality or a government corporation) created for the administration of public affairs. . . . Instrumentalities created by state, formed and owned by it in public interest, supported in whole or in part by public funds, and governed by managers deriving their authority from [the] state." Black's Law Dictionary 1105-06 (1979). See Attorney General Opinions No. 2000-12;93-62. See also 56 Am.Jur.2d Municipal Corporations, Counties, and OtherPolitical Subdivisions § 12 (2000) ("[p]ublic corporations are created for public purposes connected with the administration of the government . . .").
[17] Kan. Const., Art. 2, § 18. See also Kan. Const., Art. 15, § 1.
[18] Leek v. Theis, 217 Kan. 784, Syl. ¶ 11 (1975).
[19] Attorney General Opinion No. 97-39.
[20] Id.
[21] Kan. Const., Art. 1, § 1.
[22] See K.S.A. 75-414.
[23] K.S.A. 75-412 (emphasis added).
[24] Correspondence, H. Philip Elwood to Leroy Gattin, January 6, 2002.
[25] Emphasis added.
[26] In re Estate of Gardner, No. 85,030 (Kan. March 15, 2002) (internal citations omitted).
[27] L. 1879, Ch. 166, § 32.
[28] Id.
[29] In re Application of American Restaurant Operations, 264 Kan. 518,524 (1998).
[30] See, i.e., K.S.A. 75-7202(e) (Information Technology Executive Council; "[m]embers of the council may not appoint an individual to represent them on the council and only members of the council may vote").
[31] 63C Am.Jur.2d Public Officers and Employees § 233 (1997). Seealso 56 Am.Jur.2d Municipal Corporations, Counties, and Other PoliticalSubdivisions § 212 (2000).
[32] 63C Am.Jur.2d Public Officers and Employees § 40 (1997).