Philip E. Winter Lyon County Counselor Lyon County Courthouse 430 Commercial Emporia, Kansas 66801
Dear Mr. Winter:
As Lyon County Counselor, you request our opinion on three legal issues involving proposed agreements and contracts between Lyon County (County) and the Flint Hills Community Health Center, Inc. (Flint Hills, Inc.), a nonprofit corporation. We are informed that the proposed agreements would allow Flint Hills to assume and perform all obligations of the county relative to health related functions, but will not become effective until the proposed delegation is approved by the Kansas Department of Health and Environment (KDHE). You have provided us with copies of pertinent documents[1] and we have received input from counsel for Flint Hills, Inc. and the KDHE. We have been informed that Flint Hills, Inc. intends to operate an indigent health care clinic and provide services under a contract with KDHE, through assignment, and that the KDHE does not object to such an arrangement. We have also been informed that the intended agreements will require Flint Hills, Inc. to comply with the Kansas Open Meetings Act (KOMA), K.S.A. 75-4317 et seq. and the Kansas Open Records Act (KORA), K.S.A. 45-215 et seq.
We will address your questions in the order asked:
 1. Does Lyon County have the authority to both contract directly with Flint Hills for the provision of certain health-related services and to assign its rights and obligations under contracts existing between KDHE and Lyon County to Flint Hills to perform the services and receive payment through Lyon county?
The proposed arrangement would provide that county duties assumed by contract between Lyon County and the KDHE would be contractually delegated by the County to Flint Hills. The original 2001 contract between the KDHE and Lyon County does not provide for such sub-contracting. However, the 2003 funding agreement appears to contemplate such delegation in paragraph 21, at least as it relates to Title VI and LEP requirements. Assuming that the KDHE agrees to amend its contractual agreement with the County to allow such delegation to take place, the next issue becomes whether the County is authorized to cooperate in such a delegation.
K.S.A. 19-212 authorizes each board of county commissioners to operate the affairs and business of the county they serve. Specifically, K.S.A.19-212 Eleventh provides: "The board of county commissioners of each county shall have the power, at any meeting: . . . To contract for the protection and promotion of the public health and welfare." Thus, assuming the necessary parties all agree, and it is not otherwise precluded by law, the County has the authority to contract for this purpose.
The next issue is whether the KDHE is authorized to use, or allow the County to utilize, Flint Hills, Inc. as an instrument of the county or state, for purposes of performing health related services.[2] As an administrative agency created and empowered by the Legislature, the KDHE is vested with a great deal of authority in the areas of health and environment. As stated by the Kansas Supreme Court in Gumbhir v. KansasState Board of Pharmacy,[3] "[t]he legislature may enact general provisions for regulation and grant to state agencies certain discretion in filling in the details, provided it fixes reasonable and definitive standards to govern the exercise of such authority." However, courts commonly require agencies to set forth definite standards for discretionary decision-making in connection with the decision to grant or suspend various governmental entitlement benefits.[4] Thus, in order to protect against due process problems or allegations of unlawful delegation, we believe it is very important that any delegation of KDHE or county authority to Flint Hills, Inc. be accompanied by sufficient and clear standards.
In general, the authority being delegated by the KDHE and Lyon County to Flint Hills, Inc. does not appear to be legislative in nature. The standards and rules for provision of health care, or oversight, with regard to health related issues have in general already been established by state law or through the administrative regulations enacted by the KDHE.[5] The functions in question appear to be ones that involve providing services, conducting inspection and seeking enforcement. Where the standards are set, the administration of those standards is not a legislative function.[6] Thus, although we do not have before us all of the specific contractual agreements that may result from the intended arrangement,[7] in general we believe that both the County and the Kansas Department of Health and Environment have sufficient authority to contractually delegate non-legislative functions to Flint Hills Community Health Center, Inc. for the purpose of carrying out statutory health related duties and functions otherwise vested in those governmental entities.
2. Does Lyon County have the authority to levy taxes the proceeds ofwhich shall be used to provide health services under the contract withFlint Hills?[8]
K.S.A. 65-204 provides:
 "(a) The board of county commissioners of any county of the state may levy a tax upon all taxable tangible property in such county for the purposes authorized herein and to pay a portion of the principal and interest on bonds issued under the authority of K.S.A. 12-1774 and amendments thereto by cities located in the county, and the proceeds thereof shall be placed into a separate fund designated as `the county health fund,' which fund is hereby created, and shall be used to defray the cost of:
 "(1) Assisting in the carrying out of the health laws and rules and regulations of the state within such county;
"(2) paying the salary of the local health officer;
 "(3) any contract entered into with the governing body of any hospital located in a county having a population of less than 15,000 as provided by K.S.A. 65-201 and amendments thereto;
 "(4) the employment of additional personnel to assist the local health officer and other health authorities within such counties. . . ."[9]
This statute does not say that the tax dollars thus raised must be spent on services directly provided by the county. Rather, it is the ultimate use of such funds that is impacted by this tax levy authority. If the intended contracts between Flint Hills, Inc. and the County appear to be for they types of purposes set forth in this statute, the moneys raised pursuant to this statute may be used for any costs that assist the county in serving those purposes. Whether such expenditures are actually used for these purposes is a factual issue. However, it is our opinion that K.S.A. 65-204(a)(1) allows expenditures of funds raised under that statute for any purpose that will assist the county in carrying out the health laws and regulations of the county and state, which may include paying Flint Hills, Inc. to assist with carrying out such purposes.
Will Flint Hills be covered by the Kansas Tort Claims Act?
75-6101 et seq. establish the Kansas Tort Claims Act (KTCA). Under K.S.A. 75-6109, "except as otherwise provided in the Kansas [tort] claims act, a governmental entity is liable, and shall indemnify its employees against damages, for injury or damage proximately caused by an act or omission of an employee while acting within the scope of his or her employment."[10] K.S.A. 75-6102(c) defines a governmental entity as a state or municipality. K.S.A. 75-6102(b) defines municipality as "any county, township, city, school district or other political or taxing subdivision of the state, or any agency, authority, institution or otherinstrumentality thereof."[11] The term "instrumentality" is not defined in the KTCA.
You note that you are aware that we can only address this issue generally, because each specific fact situation must ultimately be examined in order to determine if the KTCA applies to the agents or actions in question. Counsel for Flint Hills, Inc. points out that the term "employee" is defined at K.S.A. 75-6102(d) to include "persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation and a charitable health care provider . . . `employee' also includes an employer of an indigent health care clinic." Counsel for Flint Hills, Inc. has also provided copies of correspondence between himself and the Kansas Public Employees Retirement System (KPERS). Based upon facts presented to it,[12] KPERS officials have concluded that Flint Hills, Inc. will be recognized as a qualified KPERS employer and the employees of Flint Hills, Inc. can be members of KPERS. However, we note that the criteria for determining KPERS coverage is not necessarily the same criteria used to determine KTCA coverage.[13]
K.S.A. 75-6102(d) further defines employee in a way that excludes independent contractors:
 "`Employee' means any officer, employee, servant or member of a board, commission, committee, division, department, branch or council of a governmental entity, including elected or appointed officials and persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation and a charitable health care provider. "Employee includes any steward or racing judge appointed pursuant to K.S.A. 74-8818, and amendments thereto, regardless of whether the services of such steward or racing judge are rendered pursuant to contract as an independent contractor, but does not otherwise include any independent contractor under contract with a governmental entity except. . . .[14]
`Employee' also includes an employee of an indigent health care clinic. . . ."[15]
Thus, the issue becomes whether Flint Hills Inc. is an instrumentality of the county, whether employees of Flint Hills, Inc. are employees of the county or employees of an independent contractor, or whether Flint Hills, Inc. is otherwise covered by the KTCA.
From the facts provided, it appears clear that the employees working for Flint Hills, Inc. will be that corporation's employees, and not employees of the County. There is no specific statutory authority establishing or recognizing the existence of Flint Hills, Inc. Rather, it was incorporated by the Lyon County Commissioners under K.S.A. 17-6001 etseq. It will receive funds from the County and the federal government, and expenditures of those funds will be made contingent upon performance of services as agreed to by those entities. The State and county government will only exercise control over Flint Hills, Inc., and its employees, through a series of contracts. Thus, it does not appear to us that Flint Hills, Inc. or its employees are employees or agents of the county, nor is the corporation an instrumentality of the county or state for KTCA purposes. Rather, Flint Hills, Inc. appears to be an independent contractor, free to perform services for entities other than the county or state.[16]
Nevertheless, if the county maintains a high degree of supervisory control over the employees of Flint Hills, Inc., it may be possible to maintain KCTA coverage. The totality of the written agreements and intent of the parties will determine if a person is an employee or independent contractor.[17]
As evidenced by the above emphasized language in K.S.A. 75-6102(d), and as further supported in K.S.A. 75-6115, certain employees of an indigent health care clinic are one exception to the KTCA's exclusion of independent contractors. As further clarified in K.S.A. 75-6102(h), it appears that KTCA coverage for indigent health care clinic employees applies to those clinics who have contractual agreements with KDHE. Thus, we believe that in order for the KTCA to clearly cover the employees and acts of Flint Hills, Inc., it is their contractual relationship with the KDHE, not the county, which may be the determinative factor.
In summary, although we do not have before us the specific contractual agreements that may create the intended relationships, in general it is our opinion that both Lyon County and the Kansas Department of Health and Environment (KDHE) have sufficient authority to contractually delegate non-legislative health related functions to Flint Hills Community Health Center, Inc. for the purpose of carrying out statutory health related duties and functions otherwise vested in those public entities. K.S.A.65-204(a)(1) allows expenditures of funds raised under that statute for any purpose that will assist the county in carrying out the health laws and regulations of the county and state, which may include paying Flint Hills, Inc. to assist with such purposes. Pursuant to K.S.A. 75-6102(d), 75-6102(h) and 75-6115, employees of an indigent health care clinic are covered by the Kansas Tort Claims Act if they are employees of the state or county or there is a contractual relationship between such a clinic and the KDHE.
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Theresa Marcel Nuckolls Assistant Attorney General
PK:JLM:TMN:jm
[1] A copy of one type of proposed contract with Flint Hills; a June 2003 contract between KDHE and the county, wherein the county is given grant funds; a 2001 agreement between KDHE and the county, wherein the county agrees to act as KDHE's agent for purposes of inspecting and regulating local food service establishments and letters agreeing to extensions thereto; Articles of Incorporation for Flint Hills, Inc.; and current and proposed bylaws for Flint Hills, Inc. These articles of incorporation and by-laws evidence that Flint Hills, Inc. originally had only one voting member, the County, which also had the authority to appoint all of the board of directors. However, the new articles and by-laws have substantially changed this arrangement, and now the operation of Flint Hills, Inc. will not be controlled by the County, but rather by individuals from the community. We have been verbally informed that this change in corporate structure was due to a policy decision by federal authorities, interpreting federal law to require direct citizen and community control in order to qualify Flint Hills, Inc. for receipt of federal funds.
[2] We note that certain health and environment duties or powers may also be impacted by federal laws or agreements. See e.g. Attorney General Opinion No. 98-2 discussing the federal requirements of a National Pollutant Discharge Elimination System (NPDES) permit.
[3] 228 Kan. 579 (1980).
[4] See, e.g., Morton v. Ruiz, 415 U.S. 199, 94 S.Ct. 1055,39 L.Ed.2d 270 (1974); White v. Roughton, 530 F.2d 750 (7th Cir.1975);Baker-Chaputc Cammett, 706 F. Supp. 1134 (1976). See also 2 Davis, Administrative Law Treatise § 7.26 (2nd ed. 1979).
[5] State ex rel. Tomasic v. Unified Government of WyandotteCounty/Kansas City, Kan., 264 Kan. 2983 (1998) (Delegation of legislative power, such as consolidating the governments of city and county, to a private group, as opposed to an administrative agency, is improper).
[6] Wesley Medical Center v. McCain, 226 Kan. 263 (1979) (the "array method" for determining unemployment tax rates, which delegated only task of computing tax rate pursuant to legislative formula and which did not involve any administrative discretion which could be called whim or caprice, was not an unlawful delegation of legislative authority to administrative agency in violation of separation of powers doctrine of Constitution).
[7] Each such contract must be examined to determine if the authority being delegated is (a) possessed by the county and/or KDHE in the first place, (b) specifically subject to being delegated to Flint Hills, Inc., and (c) if so, accompanied by sufficiently clear guidelines by which Flint Hills, Inc. is to act.
[8] Two prior Attorney General Opinions, No. 88-19 and 77-144, discuss this statute but do not address the issue at hand.
[9] Emphasis added.
[10] The KTCA applies to claims against a hospital owned by a municipality and the employees thereof who are acting within the scope of their employment. Knorp v. Albert, 29 Kan. App. 2d 509 (2001).
[11] Emphasis added.
[12] Mr. Phil Elwood informed KPERS that a substantial number of employees of the Lyon County Health Department (who are currently in the KPERS system) will become employees of Flint Hills, Inc. and will continue to provide much of the same services through the contract(s) with the county. Mr. Elwood concludes that Flint Hills revenue will substantially all be governmental in nature coming from and through the County or the federal Bureau of Primary Health Care (BPHC). Moreover, the contracts between the County and Flint Hills, Inc. will allow the County substantial control over Flint Hills.
[13] In determining KPERS applicability, K.S.A. 74-4902 and 74-4910
were considered, together with federal IRS codes and rules.
[14] The exceptions listed in K.S.A. 75-6102(d)(1) — (3) speak to specific independent contractors connected with the corrections and juvenile justice system.
[15] K.S.A. 75-6102(h) defines indigent health care clinic as ". . . an outpatient medical care clinic operated on a not-for-profit basis which has a contractual agreement in effect with the secretary of health and environment to provide health care services to medically indigent persons." See also K.S.A. 75-6115(a)(4).
[16] Supra, Note10, Knorp (the KCTA does not apply to independent contractors working for a municipal hospital).
[17] Id.