Ed Van Petten, Executive DirectorKansas Lottery 128 N. Kansas Avenue Topeka, Kansas 66603
Dear Mr. Van Petten:
You inquire regarding the gaming management experience requirement[1] in the recently enacted Kansas Expanded Lottery Act[2] (Act) for prospective lottery gaming facility managers that are not resident Kansas American Indian tribes. You also inquire about the provisions prohibiting a person from being both a manager of a racetrack gaming facility and a lottery gaming facility in the same zone.[3]
 I. Gaming Management Experience
The Lottery Commission (Lottery) is responsible for approving management contracts with prospective lottery gaming facility managers to operate a lottery gaming facility or enterprise at certain locations within the state.[4] The Lottery cannot approve a management contract unless the prospective lottery gaming facility manager can establish the following:
"(i) [s]ufficient access to financial resources to support the activities required of a lottery gaming facility manager under the Kansas expanded lottery act;
"(ii) [c]urrent in filing all applicable tax returns and in payment of all taxes . . . owed to the state of Kansas and any taxing subdivision where such prospective manager is located in the state of Kansas . . . and
"(iii) has three consecutive years' experience in the management ofgaming which would be class III gaming . . . operated pursuant to stateor federal law. . . ."[5]
A "lottery gaming facility manager" is "a corporation, limited liability company, resident Kansas American Indian tribe or other business entity authorized to construct and manage . . . pursuant to a lottery gaming facility management contract with the Kansas lottery . . . a lottery gaming enterprise and lottery gaming facility."[6]
It is our understanding that developing a lottery gaming enterprise may be structured through the creation of a new business entity designed to bring together several individuals and/or entities.[7] Thus, many applicants will be newly-formed business entities created for the purpose of managing a lottery gaming facility in Kansas. While the owners, directors, officers, individuals and entities within these applicants may — individually — have the requisite three years' experience, the entity itself will not. For example, Smith and Jones each have the requisite three years of class III gaming experience. They form a corporation in 2007, "Gaming Kansas, Inc." (GKI), and are the principal stockholders. GKI submits an application to be a lottery gaming facility manager.
You inquire whether the Lottery can consider the gaming management experience of "one or more of the individuals or business entities within the applicant organization"[8] or whether the Lottery can consider only the gaming management experience of the business entity itself. Utilizing the first approach, the Lottery would examine whether Smith, Jones, and any other owner, director, officer, or individual within GKI have the requisite experience. Utilizing the second approach, the Lottery would have to reject the application because the corporation — itself — lacks the requisite three years' gaming management experience.
As with most legislation, and, especially in this instance, where the legislature has created a complex framework for the expansion of gaming, the legislature cannot attend to every detail. Thus, the legislature enacts general provisions for regulation and then grants to the state agencies charged with administering the legislation the discretion to fill in the details through the adoption of regulations.[9]
The state agencies charged with administering the expanded gaming legislation are the Lottery and the Kansas Racing and Gaming Commission.[10] The Lottery has wide discretion in adopting regulations "to implement, administer and enforce the . . . Kansas expanded lottery act."[11] The Lottery is also charged with adopting "standards to promote the integrity of the gaming and finances of lottery gaming facilities, which shall apply to all management contracts. . . ."[12]
Business entities operate through their owners, directors, officers, and key employees. The legislature was keenly aware of this fact when it required background investigations of lottery gaming applicants, "their directors and officers and any other persons having an interest in such [applicants]."[13] In preparation for implementing the Act, the Lottery developed an application form for applicants that is replete with inquiries concerning an applicant's parent and subsidiary companies, directors, officers, key employees, and principal stockholders.[14] These inquiries reflect the Lottery's interpretation of the Act's intent to scrutinize the individuals and entities affiliated with the applicant regardless of the particular legal structure selected to facilitate the enterprise.[15]
Accordingly, it is our opinion that the Lottery may, through its regulatory authority, consider the gaming management experience of a lottery gaming facility applicant's owners, directors, officers, and any other individual or entity within the applicant organization that the Lottery deems necessary in order to determine whether the statutory gaming management experience requirement is met.
This authority must be exercised through the adoption of regulations pursuant K.S.A. 74-8710, as amended by L. 2007, Ch. 110, § 44. However, taking into account the time necessary to put a regulation in place and the Lottery's deadline to submit applications,[16] the Lottery may proceed now by establishing a written policy addressing the subject.
II. Manager of Racetrack Gaming Facility and Lottery Gaming Facilityin the Same Zone
You also inquire regarding the provisions prohibiting a person from being both a manager of a racetrack gaming facility and a lottery gaming facility in the same zone.
Sections 3(k) and 10(e) of L. 2007, Ch. 110 provide, as follows:
"(k) A person who is the manager of the racetrack gaming facility in a gaming zone shall not be eligible to be the manager of the lottery gaming facility in the same zone."
"(e) A person who is the manager of a lottery gaming facility in a gaming zone shall not be eligible to be the manager of the racetrack gaming facility in the same zone."
"Person" includes both a natural person and a business entity.[17] A racetrack gaming facility manager is a parimutuel licensee licensed pursuant to the Kansas Parimutuel Racing Act to manage a racetrack.[18]
These provisions come from a prior gaming bill, 2006 Senate Bill 587 (SB 587), which appears to be one of the templates for the Act. In discussing SB 587, one of the concerns raised in the Senate Federal State Affairs Committee was potential conflicts of interest between certain state officials and their family members with lottery gaming facilities and racetrack gaming facilities.[19] To address their concerns, the committee added a provision criminalizing certain conflicts of interest[20] and also included the provisions at issue here.[21]
Based upon this discussion, it is reasonable to assume that the legislature was concerned with potential conflicts of interest when individuals and entities affiliated with a parimutuel licensee are also affiliated with an entity applying to manage a lottery gaming facility in the same zone and vice versa. This concern is reflected in the lottery gaming facility application which inquires regarding the identity of affiliated individuals and business entities who are or are proposed to be the manager of a racetrack gaming facility located in the same zone as the lottery gaming facility.[22]
Accordingly, in keeping with the rationale expressed on the gaming management experience issue, it is our opinion that the Lottery may, through its regulations, determine what level of ownership, control, or affiliation with a parimutuel licensee is sufficient to disqualify an individual or entity from being eligible to manage a lottery gaming facility in the same zone as the parimutuel licensee. Likewise, the Lottery may also determine what level of ownership, control, or affiliation with a prospective lottery gaming facility manager is sufficient to disqualify an individual or entity from being eligible to manage a racetrack gaming facility in the same zone as the lottery gaming facility.
Sincerely,
Paul J. Morrison Attorney General
Mary Feighny Deputy Attorney General
PJM:MF:jm
[1] L. 2007, Ch. 110, § 3(g)(1)(B)(iii).
[2] 2007 S.B. 66, now L. 2007 Ch. 110.
[3] L. 2007, Ch. 110, §§ 3(k); 10(e).
[4] L. 2007, Ch. 110, § 3(d).
[5] L. 2007 Ch. 110, § 3(g)(1)(B). Emphasis added. An applicant who is a resident Kansas American Indian tribe must comply with the same requirements, except for the tax payment provision. L. 2007, Ch. 110, § 3(g)(1)(A).
[6] L. 2007, Ch. 110, § 1(o).
[7] Letter from Keith Kocher, Assistant Attorney General dated June 7, 2007.
[8] Id. at 2.
[9] Gumbhir v. Kansas State Bd. of Pharmacy, 228 Kan. 579 (1980).
[10] L. 2007, Ch. 110, §§ 3, 41.
[11] K.S.A. 74-8710, as amended by L. 2007, Ch. 110, § 44(a)(13).
[12] L. 2007, Ch. 110, § 3(c).
[13] L. 2007, Ch. 110, § 4(e). See also L. 2007, Ch. 110, § 20(a)(security, fitness, and background investigations required of officers, directors, key employees and persons owning 0.5% or more interest in a lottery gaming/racetrack gaming facility manager).
[14]
http://www.kslottery.com/ExpandedLotteryAct/GamingApplication_6_13_07.pdf
[15] The doctrine of operative construction of statutes provides that the interpretation of a statute by an administrative agency charged with the responsibility of enforcing the statute is entitled to judicial deference. Winnebago Tribe of Nebraska v. Kline, 150 P.3d 892 (Kan. 2007).
[16]
http://www.kslottery.com/ExpandedLotteryAct/GamingApplicationProcedure_4_30_07.pdf

at p. 6 (90 days from the certification of special election results).
[17] L. 2007, Ch. 110, § 1(x).
[18] L. 2007, Ch. 110, § 1(cc) and (v).
[19] Minutes, Senate Federal State Affairs Committee, March 10, 2006. Minutes, Senate Federal State Affairs Committee, March 14, 2006, Attachment 3.
[20] 2006 S.B. 587, § 31.
[21] Senator Anthony Hensley made the motion to include the prohibitions which were included verbatim in 2007 S.B. 66, now L. 2007, Ch. 110. Minutes, Senate Federal State Affairs Committee, March 14, 2006.
[22]
http://www.kslottery.com/ExpandedLotteryAct/GamingApplication_6_13_07.pdf at 14.