Jeff Barnes, Chair Kansas Home Inspectors Registration Board 610 Rivera Mulvane, Kansas 67110
Dear Mr. Barnes:
As chair of the Kansas Home Inspectors Registration Board (the Board), you pose several questions that pertain to the recently enacted Kansas Home Inspectors Professional Competence and Financial Responsibility Act.[1]
 Effective date of K.S.A. 2008 Supp. 58-4512
With some exceptions, [2] the Act requires that on and after July 1, 2009, all individuals performing home inspections in counties with a population of 60,000 or more be registered with the board; all other individuals performing home inspections are required to be registered on and after January 1, 2011.[3] The Act, by its own terms, provides that it "shall take effect and be in force from and after its publication in the statute book."[4] "Publication in the statute book" refers to the publication date of the 2008 Session Laws, which was July 1, 2008.[5]
Your question, however, relates to when K.S.A. 2008 Supp. 58-4512
"went into force." Two subsections in this statute requireregistered home inspectors to conduct home inspections with the degree of care a "reasonably prudent" home inspector would exercise and to provide customers with a completed pre-inspection notification.[6] Two subsections prohibit home inspectors — registered or not — from disclaiming liability or limiting liability for damages to less than $10,000.[7] The last two subsections of this statute establish a 12-month statute of limitations for damage actions and require home inspections to be conducted pursuant to standards set by the board."[8]
The Act was effective on July 1, 2008. However, there will be no registered home inspectors until July 1, 2009. Therefore, the subsections requiring registered home inspectors to conduct inspections in accordance with the "reasonably prudent home inspector" standard of care and providing pre-inspection notification do not apply until the individual is registered. However, the provisions relating to liability disclaimers and limitations became effective on July 1, 2008 and, thus, apply to all home inspectors regardless of registration status. The 12-month statute of limitation also applies to all home inspections regardless of registration status.
 Board not meeting effective date for implementation ofAct
You also pose the following question:
 "The process of receiving state approval for rules and regulation and the many other endeavors of the Board is very lengthy. The Board is trying very hard to insure that this process is finalized prior to the July 1, 2009 deadline, however if we are not able to meet this date, what are the consequences for inspectors and the industry if we fail to finish in time?"
K.S.A. 2008 Supp. 58-4511 makes performance of home inspections without being registered or exempt from registration a class A nonperson misdemeanor. The county or district attorney in the county or district where an offense occurred would have jurisdiction to file such a misdemeanor charge. Whether a charge would be brought under the circumstances you present is within the discretion of the appropriate county or district attorney. However, the board's continuous good faith efforts to implement the act in as timely a manner as possible may be a consideration in any potential charging decision.
 Membership in a home inspectors society, association or organization
In addition to passing an examination and meeting specified education or experience requirements, in order to become registered the Act requires a person to:
 "Submit proof of membership in good standing in one or more nationally recognized society, association or organization that provides for membership of individuals engaged in home inspections as recognized by the board."[9]
Your inquiry regarding the constitutionality of this requirement triggers an analysis under Article 2, Section 1 of the Kansas Constitution which provides:
 "The legislative power of this state shall be vested in a house of representatives and senate."
"Article 2, § 1 expresses the fundamental concept that we are to be governed by our duly elected representatives. It is the foundation upon which our democratic form of government is built."[10] This concept has given rise to the nondelegation doctrine.
As one law journal author explained:
 "Thus, reasoning in support of the nondelegation doctrine is straightforward. Our democratic form of government permits us to elect our representatives. If we do not approve of the decisions they make, we can vote for someone else at the next election who more closely represents our views. Private groups, on the other hand, are insulated from the democratic process because they are neither elected nor appointed by someone who is elected."[11]
As early as 1919, the Kansas Supreme Court expressed the nondelegation doctrine thus:
 "[I]t is only necessary to recur to the most simple and elementary principles of civil government. In our commonwealth the power to make, amend, alter, and repeal the laws is vested in the Legislature. That body may not abdicate its functions nor delegate its powers to any other body, however learned, wise, and far-sighted the latter may be. This principle of our Constitution and of our public policy is fundamental."[12]
In State v. Crawford, [13] the issue concerned a statute that required the installation of electric wiring be in accordance with the National Electrical Code promulgated by the National Fire Protective Association, which the Court referred to as an "unofficial organization of private persons."[14] The Court found the statute to be an unlawful delegation of legislative power and therefore unconstitutional in violation of Article 2, § 1.
In a more recent case, the Court again addressed the principles of unlawful delegation, this time in the context of a pharmacy statute that required every applicant to be a graduate of a college accredited by the American Council on Pharmaceutical Education [ACOPE], saying Article 2, § 1 prevented "usurpation of legislative authority by other departments of government as well as by a nongovernmental agency of a private individual."[15] Further, the Court said:
 "[A] strict rule is applied when the delegation of authority to some outside, nongovernmental agency is attempted. The legislative power of this state is vested in the legislature and the legislature is prohibited from delegating legislative powers to nongovernmental associations or groups."[16]
The court found that the statute had the effect of delegating to ACOPE through its accreditation process the standards of education required before registration was permitted. The statute thus gave full control and ultimate authority to a private, nonprofit association regarding a qualification to become a registered pharmacist and was therefore "constitutionally impermissible."[17]
With these constitutional holdings in mind, the issue is whether the registration requirement of being a member of a home inspectors professional association, society or organization impermissibly delegates ultimate authority to a nongovernmental entity? Under this provision of the statute, a person cannot become registered unless the person is a member, and membership criteria is entirely within the authority of such association, society or organization. Further, membership criteria may be changed sporadically at will by an association, society or organization, even causing the criteria to be much more rigorous than otherwise required by law; thus a registration applicant could be precluded from becoming a member and consequently from becoming registered. In such event, ultimate authority would rest with a nongovernmental entity rather than with the Board. Even though the statute gives the Board authority to "recognize" an association, society or organization, the Board has no authority over membership criteria. Accordingly, K.S.A. 2008 Supp. 58-4509(c)(5) impermissibly delegates legislative power to nongovernmental associations, societies and organizations in violation of Article 2, § 1 of the Kansas Constitution.[18]
Sincerely,
 Steve Six Attorney General
 Camille Nohe Assistant Attorney General
SS:MF:CN:jm
[1] K.S.A. 2008 Supp. 58-4501 et seq. (formerly L. 2008, ch. 171).
[2] K.S.A. 2008 Supp. 58-4510.
[3] K.S.A. 2008 Supp. 58-4509(a) and (b).
[4] L. 2008, ch. 171, § 15.
[5] K.S.A. 45-310; 45-311.
[6] K.S.A. 2008 Supp. 58-4512(a)(f).
[7] K.S.A. 2008 58-4512(c)(e).
[8] K.S.A. 2008 Supp. 58-4512(b)(d).
[9] K.S.A. 2008 Supp. 58-4509(c)(5). While your query did not include a reference to K.S.A. 2008 Supp. 58-4502(e) ("The pre-inspection notice shall contain, at a minimum, the following information: . . . (3) an identification of the national home inspection organizations approved by the board which the home inspector is a member of at the time of the home inspection . . ."), the analysis provided herein applies equally to that provision.
[10] Sedlak v. Dick, 256 Kan. 779, 802 (1995).
[11] Theroff, The Private Nondelegation Doctrine in Kansas and the Kansas State High School Activities Association., 44 U.Kan. L.Rev. 633, 635 (1996).
[12] State v. Crawford, 104 Kan. 141, 143 (1919).
[13] Id.
[14] Id. at 143.
[15] Gumbhir v. Kansas State Board of Pharmacy, 228 Kan. 579, 582
(1980).
[16] Id. at 584-85.
[17] Id. at 587.
[18] The research and drafting of this opinion took into considerationState Board of Healing Arts v. Beyrle, 269 Kan. 616 (2000), but found it distinguishable from the issue presented herein. In that case, a statute provided that any naturopath who had graduated from a nationally recognized naturopathic college as approved by the state naturopathic association and practicing in the state of Kansas as of January 1, 1982 be permitted to practice in Kansas without approval of the Kansas Board of Healing Arts. The Court found this statute to be a kind of grandfathering clause, as opposed to a prospective licensing requirement. "The legislature did not hand over to a private organization the right to set future standards; it merely determined that a certain class of individuals already meeting particular standards and practicing as of a particular date may continue to practice naturopathy. . . . Those standards were adopted in K.S.A. 65-2872a and are not subject to change by a nongovernmental agency because of the time limitation of the statute." Beyrle at 630-31.